2010 ND 50

**GREAT WESTERN BANK,**
Plaintiff and Appellant

v.

**WILLMAR POULTRY COMPANY,**
Defendant and Appellee.

No. 20090071.

Supreme Court of North Dakota.

March 23, 2010.

438

Jon R. Brakke (argued) and Caren Lynn Wanner Stanley (on brief), Fargo, N.D., for plaintiff and appellant.

Lowell Philip Bottrell (argued) and Michael Leonard Gust (on brief), Fargo, N.D., for defendant and appellee.

CROTHERS, Justice.

[¶ 1] Great Western Bank appeals the district court's summary judgment, holding that Willmar Poultry Company has a valid North Dakota agricultural supplier's lien with a super-priority interest of $72,356.17 in the proceeds of a sale of turkeys between ABTH, LLP, and Sara Lee Corporation. We conclude that "poults" supplied by Willmar Poultry are "supplies" under North Dakota's agricultural supplier's lien statute, N.D.C.C. § 35–31–01, and that Willmar Poultry is entitled to a supplier's lien. We further conclude that N.D.C.C. § 35–31–03 provides Willmar Poultry with "super-priority status" as the holder of an agricultural supplier's lien in livestock. We affirm.

I

[¶ 2] The relevant facts are undisputed. In 2006, Great Western made a loan of two million dollars to ABTH, LLP, which was engaged in the business of raising turkeys in Wyndmere, North Dakota. Great Western's loan was secured by a security agreement taking an interest in all of ABTH's then-existing or subsequently-acquired "poultry" and accounts. Great Western perfected its security interest. ABTH subsequently defaulted on the Great Western loan.

[¶ 3] In June and July 2007, Willmar Poultry made three shipments to ABTH of "poults," young turkeys weighing about 60 grams, with a value of $116,544.09. ABTH failed to pay $72,356.17 owed to Willmar Poultry for the poults. In October 2007, Willmar Poultry filed an agricultural supplier's lien with the North Dakota secretary of state under N.D.C.C. ch. 35–31 against the poults it delivered to ABTH. ABTH raised the poults to maturity and ultimately sold the mature turkeys to Sara Lee Corporation for $1,085,355.20. In December 2007, Sara Lee Corporation issued a check for $1,085,355.20 to Great Western and ABTH for the proceeds of the turkeys. Willmar Poultry, however, was not listed as a payee on the check.

[¶ 4] Great Western commenced this action under N.D.C.C. ch. 32–23, seeking declaratory judgment that it had sole rights to the proceeds of the sale and that Willmar Poultry's claim to an agricultural supplier's lien under North Dakota law was invalid. On cross-motions for summary judgment, the district court held Willmar Poultry had a valid claim to an agricultural supplier's lien under North Dakota law, with an interest in $72,356.17 from the turkey sale proceeds which was superior to Great Western's interest.

II

[¶ 5] "Summary judgment under N.D.R.Civ.P. 56 is 'a procedural device for promptly resolving a controversy on the merits without a trial if either party is entitled to judgment as a matter of law, and if no dispute exists as to either the material facts or the inferences to be drawn from the undisputed facts, or if resolving disputed facts would not alter the result.'" *Farmers Union Mut. Ins. Co. v. Associated Elec. and Gas Ins. Servs. Ltd.*, 2007 ND 135, ¶ 7, 737 N.W.2d 253

(quoting *ACUITY v. Burd & Smith Constr., Inc.,* 2006 ND 187, ¶ 6, 721 N.W.2d 33).

> "The party moving for summary judgment has the burden of establishing that there are no genuine issues of material fact and that the moving party is entitled to judgment as a matter of law. In deciding whether the district court appropriately granted summary judgment, this Court views the evidence in the light most favorable to the party opposing the motion, and the opposing party will be given the benefit of all favorable inferences that can reasonably be drawn from the record. On appeal, we decide whether the information available to the district court precluded the existence of a genuine issue of material fact and entitled the moving party to judgment as a matter of law."

*Schleuter v. Northern Plains Ins. Co., Inc.,* 2009 ND 171, ¶ 6, 772 N.W.2d 879 (citations and quotations omitted). "Whether summary judgment was properly granted is a question of law that this Court reviews de novo on the entire record." *Schleuter,* at ¶ 6.

## III

[¶ 6] Great Western argues that poults do not qualify as "supplies" under N.D.C.C. § 35–31–01 and that even if poults qualify as "supplies," there is no "super-priority status" for a lien on livestock under N.D.C.C. § 35–31–03. Great Western's arguments involve the interpretation of N.D.C.C. §§ 35–31–01 and 35–31–03.

[¶ 7] Statutory interpretation is a question of law which on appeal is fully reviewable. *Public Serv. Comm'n v. Minnesota Grain, Inc.,* 2008 ND 184, ¶ 9, 756 N.W.2d 763. "Words in a statute are given their plain, ordinary, and commonly understood meaning, unless defined by

statute or unless a contrary intention plainly appears." *Id.* at ¶ 9 (quoting *Farmers Union,* 2007 ND 135, ¶ 9, 737 N.W.2d 253); N.D.C.C. § 1–02–02. "Statutes are construed as a whole and are harmonized to give meaning to related provisions." *Minnesota Grain,* at ¶ 9 (quoting *Farmers Union,* at ¶ 9); N.D.C.C. § 1–02–07. Statutes should be harmonized to avoid conflicts between them. *Minnesota Grain,* at ¶ 9. This Court interprets statutes to be consistent with legislative intent and to further the statutes' policy goals and objectives. *Id.* at ¶ 10. "[This Court] presume[s] the [l]egislature did not intend an unreasonable result or unjust consequence." *Id.* (quoting *Haugenoe v. Workforce Safety & Ins.,* 2008 ND 78, ¶ 8, 748 N.W.2d 378). In construing statutes, we consider "the context of the statutes and the purposes for which they were enacted." *Falcon v. State,* 1997 ND 200, ¶ 9, 570 N.W.2d 719 (quoting *Van Klootwyk v. Arman,* 477 N.W.2d 590, 592 (N.D.1991)) ("The interpretation of a statute is a fully reviewable question of law, 'and our primary objective is to ascertain the intent of the legislature by looking at the language of the statute itself and giving it its plain, ordinary and commonly understood meaning. Consideration should be given to the context of the statutes and the purposes for which they were enacted.' "). Further, "[o]ur statutory lien laws are remedial and will be liberally construed *to effectuate their purpose of protecting those who contribute labor, skill, or materials.*" *Stockman Bank v. AGSCO, Inc.,* 2007 ND 26, ¶ 18, 728 N.W.2d 142 (emphasis added).

[¶ 8] Section 35–31–01, N.D.C.C., authorizes an agricultural supplier's lien and states:

> "Any person who furnishes supplies used in the production of crops, agricultural products, or livestock is entitled to

a lien upon the crops, products produced by the use of the supplies, and livestock and their products including milk. *As used in this chapter, the term "supplies" includes seed, petroleum products, fertilizer, farm chemicals, insecticide, feed, hay, pasturage, veterinary services, or the furnishing of services in delivering or applying the supplies.* Except as otherwise provided in this section, an agricultural supplier's lien filed in accordance with section 35–31–02 is effective from the date the supplies are furnished or the services performed. An agricultural supplier's lien filed as a security interest created by contract to secure money advanced or loaned for any purposes is not effective to secure a priority over liens filed under section 35–05–01. This chapter does not limit the sale, assignment, or transfer of an agricultural supplier's lien. However, the priority of an effective agricultural supplier's lien is not transferable from the original lienholder. After sale, assignment, or transfer, the priority of an effective agricultural supplier's lien is to be determined as of the date the lien was filed and in accordance with section 41–09–33."

(Emphasis added.)[1] Section 35–31–02, N.D.C.C., provides the procedure for a supplier to obtain an agricultural supplier's lien, including the time to file a verified statement and the information the statement must contain. Section 35–31–03, N.D.C.C., provides for the "super-priority status" of the lien, stating: "An agricultural supplier's lien obtained under the provisions of this chapter has priority, as to the crops or agricultural products covered thereby, over all other liens or encumbrances except any agricultural processor's lien."

## A

[¶ 9] Great Western argues the poults are not "supplies" under N.D.C.C. § 35–31–01. Great Western asserts the legislature, while providing a list of what "supplies" are included under N.D.C.C. § 35–31–01, deliberately omitted "livestock" or "poultry" from that list. Great Western argues under a plain reading of the statute, "livestock" cannot constitute both the final product on which a lien is placed and the supplies that produce the livestock. Great Western contends an agricultural supplier's lien can be enforced only against "products" which are produced by supplies, not the actual supplies themselves. Great Western also asserts Willmar Poultry's argument that supplies also can be "products" nullifies the concept of production critical to the statute. Great Western argues this Court should refuse to expand the definition of "supplies" to include language omitted by the legislature. Further, Great Western argues that if N.D.C.C. § 35–31–01 is ambiguous, the legislative history and the doctrine of noscitur a sociis establish that livestock and poultry were not intended to be "supplies." *See Black's Law Dictionary* 1087 (8th ed. 2004) (Noscitur a sociis is "[a] canon of construction holding that the meaning of an unclear word or phrase should be determined by the words immediately surrounding it."); *see also T.F. James Co. v. Vakoch,* 2001 ND 112, ¶ 9, 628 N.W.2d 298.

[¶ 10] The district court concluded the poults provided by Willmar Poultry to ABTH were "supplies" under N.D.C.C. § 35–31–01. The court thus concluded Willmar Poultry had a valid agricultural supplier's lien under N.D.C.C. § 35–31–01 against the proceeds of the turkeys sold to Sara Lee Corporation.

---

1. We note that N.D.C.C. § 35–31–01 was amended by 2007 N.D. Sess. Laws ch. 299, § 2, effective August 1, 2007, but does not affect the issues raised in this appeal.

[¶ 11] Under N.D.C.C. § 35–31–01, a person who furnishes "supplies" used in the production of crops, agricultural products, or livestock is entitled to an agricultural supplier's lien on the "crops, products produced by the use of the supplies, and livestock and their products." As used in N.D.C.C. ch. 35–31, the term "supplies" "includes seed, petroleum products, fertilizer, farm chemicals, insecticide, feed, hay, pasturage, veterinary services, or the furnishing of services in delivering or applying the supplies." N.D.C.C. § 35–31–01. "The word 'includes' is ordinarily not a term of limitation, but rather a term of enlargement." *Leet v. City of Minot*, 2006 ND 191, ¶ 21, 721 N.W.2d 398 (citing *Amerada Hess Corp. v. State*, 2005 ND 155, ¶ 13, 704 N.W.2d 8; *Lucke v. Lucke*, 300 N.W.2d 231, 234 (N.D.1980)).

[¶ 12] Liberally construing N.D.C.C. § 35–31–01 as a whole to protect those furnishing supplies used for the production of crops, agricultural products or livestock and consistent with the ordinary definition of "includes," the term "supplies" is not limited only to the specific items listed in the statute. Rather, the statute must be considered as a whole to protect any person furnishing supplies for the production of crops, agricultural products or livestock. In defining supplies, the legislature used broad examples "includ[ing]" veterinary and other services. Further, under the language of N.D.C.C. ch. 35–31, this type of agricultural lien is only for the value of supplies provided and attaches only to the crop, agricultural product or livestock for which it was provided.

[¶ 13] Here, Willmar Poultry's supply of poults was directly used to produce a mature flock of marketable turkeys. Under the plain language of N.D.C.C. § 35–31–01, poults are "supplies" for production of mature turkeys by ABTH. The key inquiry here under the statutory scheme is what materials are directly supplied to an agricultural operation to produce the finished agricultural product. Willmar Poultry supplied the initial essential materials, i.e., the poults, allowing ABTH to produce a mature flock of turkeys at a considerable gain in value. Without Willmar Poultry's initial supply of poults to ABTH, it is unclear to what Great Western's security interest in subsequently-acquired poultry would have attached. While it may be possible to conceive of facts and circumstances where what is being "supplied" ceases to be "supplies" and is more closely identified as the final crop, agricultural product, or livestock, that is not the case here based on the undisputed facts.

[¶ 14] We hold the district court did not err in concluding Willmar Poultry provided "supplies" for production of crops, agricultural products or livestock under N.D.C.C. § 35–31–01. We therefore conclude the court did not err in deciding Willmar Poultry obtained an agricultural supplier's lien under N.D.C.C. § 35–31–01.

B

[¶ 15] Great Western argues even if poults are "supplies," Willmar Poultry does not have super-priority status under N.D.C.C. § 35–31–03. Willmar Poultry asserts it has a super-priority lien based upon its supply of poults to ABTH.

[¶ 16] Section 35–31–03, N.D.C.C., states:

"An agricultural supplier's lien obtained under the provisions of this chapter has priority, *as to the crops or agricultural products covered thereby,* over all other liens or encumbrances except any agricultural processor's lien."

(Emphasis added.)

[¶ 17] The language of N.D.C.C. § 35–31–01 creates an agricultural supplier's

lien for any person furnishing supplies used "in the production of crops, agricultural products, or livestock." However, under N.D.C.C. § 35–31–03, this lien is granted super-priority status for "the crops or agricultural products covered thereby." Although the legislature granted an agricultural supplier's lien to those furnishing supplies used in crop, agricultural product, or livestock production, the specific language of N.D.C.C. § 35–31–03 for purposes of giving the lien super-priority does not include "livestock." This Court has not yet addressed the scope of the "super-priority status" under N.D.C.C. § 35–31–03, but this issue has been addressed in a North Dakota bankruptcy court case and in a 1998 North Dakota Attorney General's opinion.

[¶ 18] In *In re Bernstein*, 230 B.R. 144, 148–51 (Bankr.D.N.D.1999), the bankruptcy court addressed a priority challenge based upon the language of N.D.C.C. § 35–31–03. The court observed the language of the statute is "typical of a comprehensive agricultural input lien providing a mechanism by which a supplier of agricultural input may obtain a sort of purchase money security interest in the new crop or other products produced through the use of its contributed inputs." *Bernstein*, at 149 (citing Rogers, *Colliers's Farm Bankruptcy Guide, Agricultural Lien Statutes* ¶ 1.008 (1988)). The court addressed the creditor's argument that if the legislature had meant to include livestock for purposes of priority in N.D.C.C. § 35–31–03, it could have done so. *Bernstein*, at 149. The court decided that N.D.C.C. §§ 35–31–01 and 35–31–03 are ambiguous when read together, but that interpreting N.D.C.C. § 35–31–03 not to provide priority to livestock "would eviscerate a large portion of the input providers the chapter was meant to protect" and create an irrational result. *Bernstein*, at 150. The court concluded that when read

as a part of the entire chapter, the lien priority in N.D.C.C. § 35–31–03 is extended to all persons entitled to a lien under N.D.C.C. § 35–31–01. *Bernstein*, at 151–52.

[¶ 19] The bankruptcy court relied on a 1998 attorney general's opinion on this issue. *Bernstein*, 230 B.R. at 150; *see* N.D. Op. Att'y Gen. 98–L–82 (1998). The attorney general's opinion addressed "whether the term livestock in N.D.C.C. § 35–31–01 includes cows and breeding bulls and whether a lien under [N.D.C.C. ch. 35–31] on livestock has the same priority as a lien under this chapter on crops or other agricultural products." N.D. Op. Att'y Gen. 98–L–82. Although livestock is not defined in N.D.C.C. ch. 35–31, the attorney general's opinion noted that "livestock" at that time was defined in N.D.C.C. §§ 36–05–01 and 36–05.1–01 as "horses, mules, cattle, swine, sheep, and goats," and that N.D.C.C. § 57–39.2–04(11) provided that livestock includes breeding stock. N.D. Op. Att'y Gen. 98–L–82. The attorney general concluded that under N.D.C.C. ch. 35–31 "livestock" includes cows and breeding bulls. The attorney general further stated "agricultural products" was not defined by statute, but under dictionary definitions, the plain meaning of "agricultural products" includes both livestock and its products. The attorney general stated that "[a]t most an ambiguity [was] created by the use of different language in N.D.C.C. §§ 35–31–01 and 35–31–03." N.D. Op. Att'y Gen. 98–L–82. The attorney general then looked to the legislative history of N.D.C.C. ch. 35–31 to construe "agricultural products":

"A review of the legislative history of N.D.C.C. ch. 35–31 does not indicate any intent that an agricultural supplier's lien on livestock would have a different priority than an agricultural supplier's lien on other agricultural

products or on crops. During the 1997 Legislative Assembly, the priority given agricultural supplier's liens was considered and N.D.C.C. § 35–31–01 was amended by Senate Bill 2324. That amendment specifically excluded from the priority granted in Section 35–31–03 agricultural supplier's liens 'filed as a security interest created by contract to secure money advanced or loaned for any purposes.' 1997 N.D. Sess. Laws ch. 306, § 3. The amendment provided that such supplier's liens were not effective to secure priority over crop liens filed under Section 35–05–01. *Id.* In testimony presented to a legislative committee which heard Senate Bill 2324, the point was made that the change in priority should affect all farm products including livestock. Hearing on S. 2324 Before the Senate Comm. on Industry, Business and Labor, 55th Leg. (Feb. 6, 1997) (Testimony of Charles McCay, Farm Credit Services). This has been the common understanding of the agricultural supplier's lien as indicated in the Journal of Agricultural Taxation & Law article 'Modernizing Agricultural Statutory Liens After the Federal 'Clear Title' Law—The North Dakota Experience.' David M. Saxowsky et al., *Modernizing Agricultural Statutory Liens After the Federal "Clear Title" Law—The North Dakota Experience,* 11 Journal of Agricultural Taxation & Law 30 (1989). The authors point out that an overlap can exist between the agister's lien and the agricultural supplier's lien which can both apply to a supplier of feed or pasturage services for livestock. The supplier's lien offers more protection, however, due to its priority. *Id.* at 35."

N.D. Op. Att'y Gen. 98–L–82. The attorney general concluded that the term "agricultural products," as used in N.D.C.C.

§ 35–31–03, includes livestock and its products and that a lien upon livestock has the same priority as a lien under N.D.C.C. ch. 35–31 on crops or other agricultural products.

[¶ 20] In *North Dakota Fair Housing Council, Inc. v. Peterson,* this Court discussed the effect of an attorney general's opinion in the context of a challenge to a cohabitation statute:

"Although we are not bound by attorney general's opinions interpreting statutes, we will follow them if they are persuasive. *Werlinger v. Champion Healthcare Corp.,* 1999 ND 173, ¶ 47, 598 N.W.2d 820 (citing *United Hospital v. D'Annunzio,* 514 N.W.2d 681, 685 (N.D.1994); *State v. Beilke,* 489 N.W.2d 589, 593 (N.D.1992)). We give 'respectful attention to the attorney general's opinions and follow them when we find them persuasive.' *Holmgren v. North Dakota Workers Comp. Bureau,* 455 N.W.2d 200, 204 (N.D.1990). Attorney general's opinions guide state officers until superseded by judicial opinions. *Werlinger,* 1999 ND 173, ¶ 47, 598 N.W.2d 820 (citing *State ex rel. Johnson v. Baker,* 74 N.D. 244, 259, 21 N.W.2d 355, 364 (1945)).

. . . .

"Although not binding upon the courts, 'an Attorney General's official opinion nonetheless has important bearing on the construction and interpretation of a statute.' *Hughes v. State Farm Mut. Auto. Ins. Co.,* 236 N.W.2d 870, 876 (N.D.1975) (citing 2A Sutherland Statutory Construction § 49.05, p. 240; *Walker v. Weilenman,* 143 N.W.2d 689, 691 (N.D.1966)). 'Such official opinion of the Attorney General is especially persuasive when subsequent legislative action appears to confirm the opinion.' *Id.*"

2001 ND 81, ¶¶ 40–42, 625 N.W.2d 551. In *Peterson*, we observed that since a 1990 attorney general's opinion was issued, the legislature had completed five biennial sessions and had considered repealing the cohabitation statute at least once. *Id.* at ¶ 43. Further, a 1991 measure to repeal the cohabitation statute was introduced, presented with the attorney general's opinion, and defeated. *Id.* We said it was clear the legislature was aware of the alleged statutory conflict, and we concluded the legislature had impliedly approved the attorney general's opinion based on the five completed biennial legislative sessions and the defeat of the measure to repeal the cohabitation statute. *Id.* at ¶¶ 43, 44. "The implied approval [gave] even greater weight to the construction of the cohabitation statute and the attorney general's opinion." *Id.* at ¶ 44 (citing *Horst v. Guy*, 219 N.W.2d 153, 159–60 (N.D.1974); *Walker v. Weilenman*, 143 N.W.2d 689, 694 (N.D.1966); *State v. Equitable Life Assurance Soc'y*, 68 N.D. 641, 282 N.W. 411, 415–16 (1938)).

[¶ 21] In construing statutes, we consider "the context of the statutes and purposes for which they were enacted." *Falcon*, 1997 ND 200, ¶ 9, 570 N.W.2d 719 (quoting *Van Klootwyk*, 477 N.W.2d at 592). Here, the 1998 attorney general's opinion construes "agricultural products" in N.D.C.C. § 35–31–03 to grant super-priority to a supplier's lien in livestock, and a 1999 North Dakota bankruptcy court decision similarly construes that statute to provide for super-priority. Additionally, after the attorney general's opinion the legislature has amended various provisions of N.D.C.C. ch. 35–31 in 1999, 2001, and 2007, without specifically amending N.D.C.C. § 35–31–03.

[¶ 22] Although not cited in the 1998 attorney general's opinion, N.D.C.C. ch. 32–44, which addresses defamation of agricultural products and management practices, was enacted in 1997 and defines "agricultural product." *See* 1997 N.D. Sess. Law ch. 288, § 1. Under N.D.C.C. § 32–44–01(2), "agricultural product" is defined under that chapter as "any plant or animal, or the product of a plant or animal, grown, raised, distributed, or sold for a commercial purpose; the term also includes any agricultural practices used in the production of such products." That definition of an "agricultural product" includes livestock and turkeys within its scope. *See* N.D.C.C. § 1–01–09 ("Whenever the meaning of a word or phrase is defined in any statute, such definition is applicable to the same word or phrase wherever it occurs in the same or subsequent statutes, except when a contrary intention plainly appears.").

[¶ 23] Further, in 2001, North Dakota adopted revised Article 9 of the Uniform Commercial Code (U.C.C.). *See* 2001 N.D. Sess. Law ch. 361. The Montana Supreme Court has observed that "[r]evised Article 9, like its predecessor, provides a comprehensive scheme for the regulation of security interests in personal property and fixtures, but unlike the original Article 9, also brings within its scope non-possessory agricultural liens." *Stockman Bank v. Mon-Kota, Inc.*, 342 Mont. 115, 180 P.3d 1125, 1133–34 (2008). Likewise, in North Dakota, revised Article 9 applies to an agricultural lien. *See* N.D.C.C. § 41–09–09(1)(b) ("Except as otherwise provided in subsections 3 and 4, this chapter applies to ... b. An agricultural lien....").

[¶ 24] Section 41–09–02(1)(e), N.D.C.C., defines "agricultural lien" as an interest in farm products that meets certain specified statutory criteria. Section 41–09–02(1)(jj), N.D.C.C., defines "farm products" as follows:

" 'Farm products' means goods, other than standing timber, *subject to a lien*

*created under chapter 35–17, 35–30, or 35–31,* or with respect to which the debtor is engaged in a farming operation and which are:

(1) Crops grown, growing, or to be grown, including:

(a) Crops produced on trees, vines, and bushes; and

(b) Aquatic goods produced in aquacultural operations;

(2) Livestock, born or unborn, including aquatic goods produced in aquacultural operations;

(3) Supplies used or produced in a farming operation; or

(4) Products of crops or livestock in their unmanufactured states."

(Emphasis added.) Under N.D.C.C. § 41–09–02(1)(kk), "farming operation" is defined as "raising, cultivating, propagating, fattening, grazing, or any other farming, livestock, or aquacultural operation." Further, under N.D.C.C. § 41–09–42(7), "[a] perfected agricultural lien on collateral has priority over the conflicting rights of a lien creditor and over a conflicting security interest in or agricultural lien on the same collateral *if the statute creating the agricultural lien so provides.*" (Emphasis added.) None of these provisions enacted subsequent to the enactment of N.D.C.C. ch. 35–31 reflect a legislative intent to exclude livestock from the priority given under N.D.C.C. § 35–31–03.

[¶ 25] Considering the context and purpose of the priority given liens created under N.D.C.C. ch. 35–31 and harmonizing these sections with related statutes, we conclude the district court did not err in deciding Willmar Poultry's agricultural supplier's lien has super-priority status under N.D.C.C. § 35–31–03. We therefore conclude the district court did not err in granting Willmar Poultry summary judgment on its claim for $72,356.17 in the proceeds from the sale of turkeys between ABTH and Sara Lee Corporation.

## IV

[¶ 26] The judgment is affirmed.

[¶ 27] GERALD W. VANDEWALLE, C.J., GARY H. LEE, D.J., MARY MUEHLEN MARING, and DALE V. SANDSTROM, JJ., concur.

[¶ 28] The Honorable GARY H. LEE, D.J., sitting in place of KAPSNER, J., disqualified.