Filed 5/14/13 by Clerk of Supreme Court

IN THE SUPREME COURT

STATE OF NORTH DAKOTA

2013 ND 72

Gadeco, LLC, Appellant

v.

Industrial Commission of the State 

of North Dakota and Slawson Exploration 

Company, Appellees

No. 20120344

Appeal from the District Court of Mountrail County, Northwest Judicial District, the Honorable Richard L. Hagar, Judge.

AFFIRMED.

Opinion of the Court by Crothers, Justice.

Ariston E. Johnson (argued) and Dennis E. Johnson (on brief), P.O. Box 1260, Watford City, N.D. 58854-1260, for appellant.

Hope L. Hogan, Assistant Attorney General, 500 North 9th Street, Bismarck, N.D. 58501, for appellee Industrial Commission of the State of North Dakota.

Lawrence Bender (argued), Amy L. De Kok (on brief) and Michael D. Schoepf (on brief), P.O. Box 1855, Bismarck, N.D. 58502-1855, for appellee Slawson Exploration Company.

Gadeco v. Industrial Commission

No. 20120344

Crothers, Justice.

[¶1] In 
Gadeco LLC v. Industrial Comm’n
, 2012 ND 33, ¶¶ 19-21, 812 N.W.2d 405, we reversed an Industrial Commission order authorizing Slawson Exploration Company to assess a 200 percent risk penalty against Gadeco, LLC, for failing to accept Slawson’s invitation to participate in the Coyote 1-32H well within 30 days, and we remanded to the Commission to explain its decision.  On remand, the Commission determined Slawson’s invitation to Gadeco to participate in the Coyote 1-32H well complied with regulatory requirements and authorized Slawson to assess a 200 percent risk penalty against Gadeco.  Gadeco appeals from a district court judgment affirming the Industrial Commission’s order on remand.  We affirm.

I

[¶2] In 
Gadeco
, we outlined the legal background for authorization of a risk penalty, and we described the factual circumstances underlying the Commission’s authorization of a 200 percent risk penalty against Gadeco for failing to accept Slawson’s invitation to participate in the Coyote 1-32H well within 30 days:

“Slawson and Gadeco are owners of oil and gas leasehold interests in a section of real property located in Mountrail County which comprises the spacing unit for the Coyote 1-32H well.  On July 8, 2009, Slawson sent to Gadeco and to other working interest owners in the spacing unit invitations to participate in the cost of drilling and completing the well.  The letter stated:   

“Slawson Exploration Company, Inc., proposes to drill the Coyote #1-32H well from a surface location in the SWSE of Section 32-152N-92W, Mountrail County, North Dakota. This well will test the Bakken formation and will be drilled to an approximate total vertical depth not to exceed 10,500 feet, with a single lateral terminating in the N2NE of Section 32. This is a 640-acre spacing unit comprised of the above-referenced section. The estimated spud date for the Coyote #1-32H is 
August 25, 2009
.  

“A recent records check indicates that you have a leasehold interest in this spacing unit, and you are offered participation in the Coyote #1-32H well based upon your ownership.  Please indicate your election to participate in this well in the space provided at the end of this letter.

“In the event you do not elect to participate in the drilling of the Coyote #1-32H well, Slawson plans to impose a risk penalty in accordance with North Dakota law.  You may object to the risk penalty by filing an application or request for hearing with the North Dakota Industrial Commission.

“If you choose to participate in this well, please sign the attached AFE (authority for expenditure) with costs of $2,707,375 DHC (dry hole costs) and $4,219,256 completed.  Return this letter and AFE within 30 days by mail, e-mail, or fax . . . . 

“On July 15, 2009, Slawson sent another letter to Gadeco and the other working interest owners stating:  

“Please note the surface location and estimated spud date of the Coyote #1-32H well have changed (proposal originally sent under letter dated July 8, 2009).  The new information is listed below: 

“•The new surface location is NWNE of 
Section 5-151N-

92W
, Mountrail County, North Dakota. The bottom hole location remains the same—N2NE of Section 32-152N-

92W. 

“•The estimated spud date has changed to 
September 27, 2009
 (originally August 25, 2009). 

“On August 19, 2009, Gadeco signed and returned the invitation, electing to participate in the well and sending a check for $338,421.87 for its proportionate share of expenses.  On August 20, 2009, Slawson acknowledged receipt of the election and check, but returned the check to Gadeco explaining ‘[s]ince this proposal was received by Gadeco, LLC, on July 10, 2009, the 30-day election period expired on Monday, August 10, 2009.’ 

“In November 2009, Slawson filed an application with the Commission requesting an order pooling all interests in the well’s spacing unit and authorizing recovery of a 200 percent risk penalty against Gadeco as a nonparticipating owner under N.D.C.C. § 38-08-

08(3)(a).  Gadeco objected to assessment of the risk penalty and, following a hearing, the Commission pooled all interests and authorized Slawson to impose the 200 percent risk penalty.  In authorizing assessment of the risk penalty, the Commission stated:  

“(10) . . . Gadeco believes its election was timely and argues Slawson’s invitation was invalid because the location of the well and spud date were amended.  Gadeco argues Slawson was required to revise the AFE and confirm the spacing unit had not changed.  Slawson responded that its letter to Gadeco received on July 17, 2009, indicated the only change was the surface location and the spud date.  Slawson further indicated the AFE was not revised because the new location would be drilled from an existing well site and that savings would offset any additional drilling and completion costs.  Slawson stated it actually spent approximately $3.4 million on drilling and completion costs on the Coyote #1-32H well, much below the estimated costs of $4.2 million.

“(11) The Commission concludes Slawson has complied with NDAC Section 43-02-03-16.3 and that because Slawson failed to receive Gadeco’s election by August 10, 2009, the risk penalty may be assessed against Gadeco’s leasehold interests.”

2012 ND 33, ¶¶ 9-12, 812 N.W.2d 405.  

[¶3] The district court reversed the Commission’s decision holding that, after sending the July 8, 2009 invitation to participate, Slawson changed three of the five requirements for an invitation—the location of the well, the itemization of estimated costs, and the approximate spud date.  
See
 N.D. Admin. Code § 43-02-03-16.3(1).  The court determined the changed facts required that Slawson provide Gadeco with a new invitation to participate in the Coyote 1-32H well.

[¶4] In 
Gadeco
, we reversed and remanded to the Commission, stating:

“The Commission’s decision in this case does not explain how it reached the conclusion that the risk penalty could be assessed, except to note Slawson ‘complied’ with the pertinent regulations and Gadeco’s election was untimely because it was not received by Slawson by August 10, 2009.  There can be no serious dispute that changes were made to the original invitation to participate. Although the Commission and Slawson argue the changes were not material or substantial, the decision fails to explain that the Commission was employing this standard, let alone why it did not deem the changes to be material or substantial. 

“The argument that immaterial or insubstantial changes do not necessitate a new amended invitation to participate is compatible with the administrative requirements for the ‘estimated’ costs and the ‘approximate’ spud date under N.D. Admin. Code § 43-02-03-16.3(1)(a)(2) and (3).  The administrative requirement for the location of the well does not call for an estimation or an approximation.  
See
 N.D. Admin. Code § 43-02-03-16.3(1)(a)(1).  But even if immaterial or insubstantial deviations from the administrative requirements that do not refer to estimations or approximations are allowable, 
see
 N.D.C.C. § 31-11-05(24) (‘The law disregards trifles.’), the Commission and Slawson have offered no explanation why, in view of the changes that were made, Gadeco’s ten-day tardiness in accepting the invitation and forwarding its share of the costs is not an equally immaterial and insubstantial deviation.  Moreover, the Commission might well have based its decision on other unspecified factors. 

“The Commission must provide some indication that it is complying with the law before a reviewing court can afford any deference to its decisions.  
See
 
Hystad [v. Indus. Comm’n]
, 389 N.W.2d [590,] 598 [(N.D. 1986)].  Although the district court ruled a new invitation to participate was necessary ‘because of changes in three of the five things required’ under the administrative regulation, a reviewing court needs to know the reasons for the Commission’s decision before the court can intelligently rule on the issues.  Because the Commission’s findings are insufficient to enable us to understand the basis for its decision, we reverse the judgment and remand to the Commission for the preparation of findings of fact that reveal the basis for its decision.”

2012 ND 33, ¶¶ 19-21, 812 N.W.2d 405.

[¶5] On remand, the Commission again authorized Slawson to assess a 200 percent  risk penalty against Gadeco, ruling Slawson’s invitation to participate complied with the regulatory requirements for a valid invitation to participate and Gadeco failed to accept the invitation within 30 days of receipt:

“Requiring the invitation to participate to include the location of the proposed or existing well and its proposed depth and objective zone will allow working interest owners to conduct an evaluation as to the economic potential of the project.  The Commission believes the crucial well location is the ‘completion location’ (the interval of the well bore that hydrocarbons are produced from), not the surface location, hence the requirement of the well’s proposed depth and objective zone.  Slawson made it very clear in their [July 15, 2009] letter Gadeco received July 17, 2009, that the only change was the surface location and the spud date, therefore the completion location did not change.  The Commission notes it is becoming commonplace for multi-well sites to be drilled in the Bakken play and there is a considerable amount of cost savings when such operations are utilized versus drilling each well from its own single-well site. 

“Requiring the invitation to participate to include an itemization of the estimated costs of drilling and completion will allow working interest owners to calculate their financial responsibility necessary to participate in the well. Slawson included an AFE in its invitation to Gadeco.  An AFE is an estimate of expected costs to drill and complete the well, but it is common place to have some costs overestimated or underestimated, due to various conditions encountered during the location preparation, drilling, and completion of the well.  Slawson further indicated the AFE was not revised because the new location would be drilled from an existing well site and that savings would offset any additional drilling and completion costs.  The Commission notes its pooling orders provide that in the event of any dispute as to such costs the Commission shall determine the proper cost, which can only be determined after the well is drilled. 

“Requiring the invitation to participate to include the approximate date upon which the well was or will be spudded or reentered is important so working interest owners know the well has been or will soon be drilled.  Pursuant to NDAC Section 43-02-03-16.3, an election to participate is only binding upon an owner electing to participate if the well is spudded or reentry operations are commenced on or before ninety day[s] after the date the owner extending the invitation to participate sets as the date upon which a response to the invitation is to be received.  The new spud date of September 27, 2009, given by Slawson was still within this ninety-day period, which ended November 8, 2009, therefore, the Commission accepts the new spud date as approximate under the invitation Gadeco received from Slawson on July 10, 2009.   

“Requiring the invitation to be accepted within thirty days of receiving has been part of the rule since its inception.  Due to the enormous costs necessary to operate in the oil and gas industry, companies must raise venture capital to fund their exploration and development operations.  It is crucial for companies to plan ahead and have a dependable drilling plan so they can accurately predict the amount of money necessary to fund the drilling and completing of each well.  When a working interest owner does not participate in the well, the operator must cover the additional costs, which will affect future funds available for other wells on the operator’s drilling schedule.  The Commission concludes flexibility in the thirty-day deadline should not be allowed. 

“(17)  The Commission concludes Slawson has complied with NDAC Section 43-02-03-16.3 and that because Slawson failed to receive Gadeco’s election by August 10, 2009, the risk penalty may be assessed against Gadeco’s leasehold interests.”  

[¶6] The district court affirmed the Commission’s order, concluding its “findings and conclusions are sustained by the law and by substantial and credible evidence.”

II

[¶7] Judicial review of a Commission order is governed by N.D.C.C. § 38-08-14(3), providing, “[o]rders of the commission must be sustained by the district court if the commission has regularly pursued its authority and its findings and conclusions are sustained by the law and by substantial and credible evidence.”  We “appl[y] the same standard of review in appeals from district court involving orders of the Commission.”  
Gadeco
, 2012 ND 33, ¶ 15, 812 N.W.2d 405.  “The ‘substantial evidence’ test ‘is something less’ than the greater weight of the evidence and the preponderance of the evidence tests, and differs from the usual standard of review for administrative decisions under N.D.C.C. § 28-32-46.”  
Gadeco
, at ¶ 15 (quoting 
Hanson v. Indus. Comm’n
, 466 N.W.2d 587, 590 (N.D. 1991)).  “‘Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion,’ and we ‘accord greater deference to Industrial Commission findings of fact than we ordinarily accord to other administrative agencies’ findings of fact.’”  
Gadeco
, at ¶ 15 (quoting 
Hanson
, at 590).  “The Commission’s decisions on questions of law are fully reveiewable on appeal.”  
Gadeco
, at ¶ 15.

III

[¶8] Gadeco argues Slawson’s invitation to participate in the well did not comply with N.D. Admin. Code § 43-02-03-16.3.  Gadeco contends the language of that regulation requires the location of the well to be stated in a valid invitation and Slawson’s July 15, 2009 change in the surface location invalidated the July 8, 2009 invitation to participate.  Gadeco also asserts Slawson’s July 15, 2009 letter eliminated certain items of cost of the well, which did not comply with the requirement for “estimated” costs, and that Slawson’s subsequent letter changed the “spud” or drilling date, which did not comply with the requirements for an “approximate” spud date.  Gadeco claims “[e]ither the well that Slawson invited Gadeco to participate in is distinct from the well for which the risk penalty was imposed (because the changes to the well were not allowed by the risk penalty statute and regulation) or Gadeco’s delay in making its election to participate was immaterial (because it was a ten-day delay in light of a thirty-three-day delay in drilling the well).” 

[¶9] The Commission and Slawson respond the “location” of a horizontal well does not mean the surface location but means the depth of the well and the location of its production.  They also argue the cost of the well and the spud date are flexible and only the estimated costs and approximate spud date are required in an invitation.  They further argue Gadeco was not entitled to additional time to accept the invitation because the mandatory language of N.D. Admin. Code § 43-02-03-16.3(1)(b) states an election to participate “must be received . . . within thirty days of the participating party’s receipt of the invitation.”

[¶10] The issue here involves interpretation of N.D. Admin. Code § 43-02-03-16.3 pertaining to the requirements for an invitation to participate in the costs of drilling a well.  Administrative regulations are derivatives of statutes and are construed under rules of statutory construction.  
Sloan v. North Dakota Workforce Safety & Ins.
, 2011 ND 194, ¶ 14, 804 N.W.2d 184.  Statutory interpretation is a question of law, fully reveiewable on appeal.  
GO Comm. ex rel. Hale v. City of Minot
, 2005 ND 136, ¶ 9, 701 N.W.2d 865.  The objective in interpreting regulations is to determine the drafter’s intent by first looking at the language itself.  
Boumont v. Boumont
, 2005 ND 20, ¶ 8, 691 N.W.2d 278.  Words are given their plain, ordinary, and commonly understood meaning, unless defined or unless a contrary intent plainly appears.  
Id.
  
See
 N.D.C.C. § 1-02-02.  Regulations are construed as a whole and are harmonized to give meaning to related provisions. 
Boumont
, at ¶ 8.  
See
 N.D.C.C. § 1-02-07.  If the relevant language is clear and unambiguous, “the letter of it is not to be disregarded under the pretext of pursuing its spirit.” N.D.C.C. § 1-02-05.  If the relevant language is susceptible to different, rational meanings, it is ambiguous.  
Amerada Hess Corp. v. State ex rel. Tax Comm’r
, 2005 ND 155, ¶ 12, 704 N.W.2d 8.  If the relevant language is ambiguous or doubtful in meaning, a court may consider extrinsic aids, including history, to determine intent.  N.D.C.C. § 1-02-39.  

[¶11] Throughout the prior appeal and this appeal, all parties have cited the following version of N.D. Admin. Code § 43-02-03-16.3(1) as the administrative regulation applicable to Slawson’s July 8, 2009 invitation to Gadeco to participate in the Coyote 1-32H well:

“An owner may recover the risk penalty under the provisions of subsection 3 of North Dakota Century Code section 38-08-08, provided the owner gives, to the owner from whom the penalty is sought, a written invitation to participate in the risk and cost of drilling a well, including reentering a plugged and abandoned well, or the risk and cost of reentering an existing well to drill deeper or a horizontal lateral.  If the nonparticipating owner’s interest is not subject to a lease or other contract for development, an owner seeking to recover a risk penalty must also make a good-faith attempt to have the unleased owner execute a lease.

“a. The invitation to participate in drilling must contain the following:

(1) The location of the proposed or existing well and its proposed depth and objective zone.

(2) An itemization of the estimated costs of drilling and completion.

(3) The approximate date upon which the well was or will be spudded or reentered.

(4) A statement indicating the invitation must be accepted within thirty days of receiving it.

(5) Notice that the participating owners plan to impose a risk penalty and that the nonparticipating owner may object to the risk penalty by either responding in opposition to the petition for a risk penalty, or if no such petition has been filed, by filing an application or request for hearing with the commission.

“b. An election to participate must be in writing and must be received by the owner giving the invitation within thirty days of the participating party’s receipt of the invitation.”

[¶12] The source notes for N.D. Admin. Code § 43-02-03-16.3 and historical documents at the legislative council reflect the version of the rule cited by the parties was adopted effective April 1, 2010, and no language indicates the 2010 version was intended to be retroactive.  
See
 
Gerhardt v. C.K.
, 2008 ND 136, ¶¶ 7-8, 751 N.W.2d 702 (involving 2005 provision of Uniform Parentage Act, which explicitly stated it did not apply retroactively, and applying 1993 statute).  The same source notes and historical documents reflect the regulation governing Slawson’s July 8, 2009 invitation to participate was adopted effective January 1, 2008.
(footnote: 1)  
See
 
State v. Dimmler
, 456 N.W.2d 297, 298 (N.D. 1990) (holding correct date to use when determining controlling statute is date upon which claim arose).  

[¶13] In other contexts, we have said issues not properly preserved may be waived or not considered by this Court.  
See
 
Ruud v. Frandson
, 2005 ND 174, ¶ 10, 704 N.W.2d 852 (stating, “Issues not raised in the trial court cannot be raised for the first time on appeal.”); 
State v. Kraft
, 539 N.W.2d 56, 58 (N.D. 1995) (stating failure to preserve nonjurisdictional issue for review in conditional plea agreement precludes raising issue on appeal); 
Bjerklie v. Workforce Safety & Ins.
, 2005 ND 178, ¶ 7, 704 N.W2d 818 (stating specifications of error in administrative appeal must specifically enumerate alleged errors at administrative level and failure may result in summary affirmance).  “Statutory rights or benefits may generally be waived by the party entitled to such benefits unless such a waiver is against public policy or the statute declares or implies that they may not be waived.”  
Brunsoman v. Scarlett
, 465 N.W.2d 162, 167 (N.D. 1991).  “As generally used, the law of the case is defined as ‘the principle that if an appellate court has passed on a legal question and remanded the cause to the court below for further proceedings, the legal question thus determined by the appellate court will not be differently determined on a subsequent appeal in the same case where the facts remain the same’” and “the law of the case doctrine ‘encompasses not only those issues decided on the first appeal, but also those issues decided by the trial court prior to the first appeal which were not presented for review at the first appeal.’”  
Peoples State Bank v. Molstad Excavating, Inc.
, 2006 ND 183, ¶ 10, 721 N.W.2d 43 (quoting 
Tom Beuchler Constr., Inc. v. City of Williston
, 413 N.W.2d 336, 339 (N.D. 1987)).

[¶14] Throughout the prior appeal and this appeal, the parties and the Industrial Commission cited to and relied on the version of N.D. Admin. Code § 43-02-03-16.3 adopted effective April 1, 2010.  The parties have not preserved any issues about the application of a different version of that regulation.  Under these circumstances, the foregoing authorities confine our decision in this appeal to the version of the rule cited and relied upon by the parties, the Commission and this Court. 

[¶15] The plain language of N.D. Admin. Code § 43-02-03-16.3(1) (April 1, 2010) allows flexibility in an invitation to participate for “estimated” costs and for the “approximate” spud date of the well.  
Gadeco
, 2012 ND 33, ¶ 20, 812 N.W.2d 405.  However, language relevant to the location of the well states the invitation must contain “[t]he location of the proposed or existing well 
and
 its proposed depth and objective zone.”  N.D. Admin. Code § 43-02-03-16.3(1)(a)(1) (April 1, 2010) (emphasis added).
(footnote: 2)   The Commission’s decision explains the crucial well location is the completion location and not the surface location.  The prefatory language of N.D. Admin. Code § 43-02-03-16.3(1) explicitly recognizes the possibility of a “horizontal lateral” and, although the surface location may lose some significance with the advent of horizontal drilling, plain language of the administrative rule requires the invitation to participate to include the location of the proposed or existing well 
and
 its proposed depth and objective zone.  
Id.
  “Unlike the term ‘or,’ which is disjunctive in nature and ordinarily indicates an alternative between different things or actions, the term ‘and’ is conjunctive in nature and ordinarily means in addition to.”  
Narum v. Faxx Foods, Inc.
, 1999 ND 45, ¶ 20, 590 N.W.2d 454 (citations omitted).  In the context of administrative regulations, “[t]he literal meaning of the terms ‘and’ and ‘or’ ‘should be followed unless it renders the statute inoperable or the meaning becomes questionable.’”  
Christl v. Swanson
, 2000 ND 74, ¶ 12, 609 N.W.2d 70 (quoting 1A Norman J. Singer, 
Sutherland Statutory Construction
 § 21.14 (5th ed. 1991) (2000 Cum. Supp. 26)).  The Commission’s interpretation ignores the word “and,” which indicates a clear intent that the location, the proposed depth, and the objective zone all must be included in the invitation.  

[¶16] One commonly used definition of “location” is “a tract of land designated for a purpose.”  
Merriam-Webster’s Collegiate Dictionary
 730 (11th ed. 2005).  Another source defines “location” as “a tract of land whose bounds have been officially designated (as for settlement or for a mining claim).”  
Webster’s Third New International Dictionary
 1327-28 (2002).  Still another source defines “location” as “[t]he designation of the boundaries of a particular piece of land, either on the record or on the land itself.”  
Black’s Law Dictionary
 1024 (9th ed. 2009).  Those definitions describe location as pertaining to the surface of land and are not entirely compatible with the Commission’s explanation of location as required only the completion location for a well.  Moreover, the term “location” is used in conjunction with the phrase “and its proposed depth and objective zone” in N.D. Admin. Code § 43-02-03-

16.3(1)(a) (April 1, 2010).  When those terms are construed together as required under the rules of construction, they mean the surface location of the well, the proposed depth of the well and the objective zone for the end of the well.

[¶17] We nevertheless conclude the Commission has discretion and administrative expertise to evaluate compliance with the requirements for an invitation to participate.  Slawson’s July 8, 2009 invitation contained the requirements for a valid invitation to participate, including a description of the surface location, the vertical depth of the well and the termination point for the single lateral in the Bakken formation.  The import of the Commission’s decision about the location of the well, the estimated costs and the approximate spud date is that Slawson’s July 15, 2009 letter did not substantially alter the requirements for a valid invitation for the well.  In 
Gadeco
, we said that “even if immaterial or insubstantial deviations from the administrative requirements that do not refer to estimations or approximations are allowable, 
see
 N.D.C.C. § 31-11-05(24) (‘The law disregards trifles.’), the Commission and Slawson offered no explanation why, in view of the changes that were made, Gadeco’s . . . tardiness in accepting the invitation and forwarding its share of the costs is not an equally immaterial and insubstantial deviation.”  2012 ND 33, ¶ 20, 812 N.W.2d 405.  [¶18] At the administrative hearing, Todd Slawson, the Chief Operating Officer of Slawson, explained the reason for moving the surface location of the well and the offset in expenses for the well:

“The lateral did not change.  It’s [sic] always been in the east half of the Section 32.  But originally, we tried to be—the surface location was in the southwest southeast of Section 32 for the Coyote well.

“We had problems with [a surface owner].  He had a center pivot irrigation system on the 160 down there.  And in order not to mess up that system, we just moved it simply across the line and expanded the Jericho pad, keeping the lateral in the same place, going north on the—staying on the 320, but we just moved the surface location a little bit to the south.  That saved money on the location, but a little bit extra money to drill, drill across the road, but the savings were about equal to the extra expenditure.” 

[¶19] Todd Slawson also testified about the purpose of the July 15, 2009 letter:

“It basically indicates, just for informational purposes, the new information, and it states the new information listed below.

“And two things have changed.  First of all, it’s indicating that the surface location has moved from the southwest southeast of Section 32 to the northwest northeast of Section 5.  So at that time we resolved that, basically, it’s probably best to go ahead and move it down, expand the Jericho pad, put this well down here.  Pad drilling wasn’t uncommon for us.

“And also, we thought that there would be another well that would be drilled before this, and so we said this—the spud date looks like it’s going to be September 27th versus the August 15th—25th date in the original letter. . . .  

“[T]here was no change to the well path.  There was no change to the AFE.  This letter is basically informational, just saying which information has changed from the proposal.  That was the surface location and the estimated spud date.

. . . .

“It basically was just informational reasons only, that basically that the—the surface location had changed and that the estimated spud date could be a little later.

“We ask that people prepay, so sometimes people need this for the planning of their—their budgets and things like that.  When it is going to—when is it going to spud?  So we try to keep people as accurately informed as possible when things are going to spud.  And so that’s the purpose of it.”  

[¶20] The Commission heard evidence entitling it to conclude the changes to the surface location of the well, the estimated costs and the approximate spud date were “informational” and insubstantial for purposes of the validity of Slawson’s July 8, 2009 invitation to participate.  Evidence in this record establishes that a reasonable mind might accept as adequate the Commission’s findings that the actual well did not substantially deviate from Slawson’s invitation to participate and, under those circumstances, that Slawson was not required to issue Gadeco another invitation to participate.  Under our deferential standard of review, the Commission’s decision about the validity of the invitation to participate is supported by substantial and credible evidence. 

[¶21] Under the plain language of the administrative regulation cited by the parties and used by the Commission, “[a]n election to participate . . . must be received by the owner giving the invitation within thirty days of the participating party’s receipt of the invitation.”  N.D. Admin. Code § 43-02-03-16.3(1)(b) (April 1, 2010).  The term “must” indicates a mandatory and not a directory or nonmandatory duty.  
Federal Land Bank of St. Paul v. Waltz
, 423 N.W.2d 799, 802 (N.D. 1988).  The Commission’s decision adequately explained that flexibility in the 30-day deadline for accepting the invitation is not permitted because of operational costs in the oil and gas industry.  Evidence about the costs for wells supports the Commission’s decision.  The Commission therefore did not err in construing the language in the regulation to require Gadeco’s election to participate to be received by Slawson within 30 days of Gadeco’s receipt of the invitation and in authorizing Slawson to assess the risk penalty against Gadeco.  

IV

[¶22] We affirm the judgment. 

[¶23] Daniel J. Crothers

Mary Muehlen Maring

Carol Ronning Kapsner

Dale V. Sandstrom

Gerald W. VandeWalle, C.J.

FOOTNOTES
1:
Those sources reflect the version of N.D. Admin. Code § 43-02-03-16.3(1) adopted effective January 1, 2008, provided: 

“a. The invitation to participate in drilling must contain the following:

(1) The location of the proposed or existing well and its proposed depth and objective zone.

(2) An itemization of the estimated costs of drilling and completion.

(3) The approximate date upon which the well was or will be spudded or reentered.

(4) The time within which the invitation must be accepted.  At least thirty days should be given, for it is presumed that at least thirty days is needed to adequately consider and respond to an invitation.  In unusual circumstances, however, the owner seeking the risk penalty may allow less than thirty days in which to respond to the invitation, but in no circumstances may less than fifteen days be allowed.

(5) Notice that the participating owners plan to impose a risk penalty and that the nonparticipating owner may object to the risk penalty by either responding in opposition to the petition for a risk penalty, or if no such petition has been filed, by filing an application or request for hearing with the commission.

“b. An election to participate must be in writing.”  

2:
Section 43-02-03-16.3(1)(a)(1) was amended effective April 1, 2012, to require the invitation to state, “The approximate location of the proposed or existing well and its proposed depth and objective zone.”