2014 ND 235

**Megan GROSSMAN FKA Megan Johnson, Plaintiff**

**v.**

**Dustin LERUD, Defendant and Appellant,**

**and**

**State of North Dakota, Statutory Real Party In Interest and Appellee.**

**No. 20140182.**

Supreme Court of North Dakota.

Dec. 18, 2014.

Cynthia G. Schaar, Jamestown, ND, for statutory real party in interest and appellee.

Kristin A. Overboe, Fargo, ND, for defendant and appellant.

VANDE WALLE, Chief Justice.

[¶ 1] Dustin Lerud appealed from the April 4, 2014, second amended judgment of the district court modifying his child support obligation. We affirm, concluding that the district court correctly imputed Lerud's income under the North Dakota child support guidelines using a North Dakota statewide average.

I

[¶ 2] Dustin Lerud and Megan Grossman have a minor child together. As part of the original judgment, Lerud was required to pay child support based on imputation of his income at the minimum wage. Grossman requested a review of Lerud's child support obligation. The State moved to modify the judgment increasing his child support obligation to $542 per month. Prior findings by the district court indicated Lerud was employed full-time as a farm manager in Minnesota over the past three years, and during the winter he spent time marketing and selling grain as well as attending farm conventions. The State submitted Lerud's 2011 and 2012 North Dakota tax returns, profit and loss state-ments, W–2 forms, and the 2012 Employment and Wages by Occupation publication of the North Dakota Job Service in support of the motion.

[¶ 3] The State sought imputation of Lerud's income under N.D. Admin. Code § 75–02–04.1–07(2)(a) based on the Job Service 2012 Employment and Wages by Occupation publication. The judicial referee found Lerud's income was less than six-tenths of the statewide average earnings for persons with similar work history and occupational qualifications, and he was underemployed. Lerud did not dispute imputation, but objected to utilizing a North Dakota statewide average of an entry-level farm manager under N.D. Admin. Code § 75–02–04.1–07(3) rather than a Minnesota statewide average where he worked. Lerud argued the average farm acreage in Minnesota is smaller than the North Dakota average, and the best measure to impute income is Minnesota's average. In support, Lerud submitted a United States Department of Labor publication providing average income of farming, fishing, and forestry occupations in Minnesota and the average income of agricultural workers in crop production and support.

[¶ 4] The judicial referee granted the State's motion and imputed Lerud's income based on a North Dakota statewide average. The judicial referee's findings did not accept the Minnesota standard as Lerud did not provide evidence as to his farm acreage, and the job description listed in the North Dakota Job Service publication more accurately described Lerud's employment compared to the United States Department of Labor categories. On review, the district court adopted the referee's findings and entered a final amended judgment.

II

[¶ 5] Lerud argues the district court erred in finding that the North Da-

kota child support guidelines require the imputation of a North Dakota farm manager's statewide earnings average in determining underemployment and imputation of income.

[¶ 6] "Child support determinations involve questions of law which are subject to the de novo standard of review, findings of fact which are subject to the clearly erroneous standard of review, and may, in some limited areas, be matters of discretion subject to the abuse of discretion standard of review." *State ex rel. K.B. v. Bauer*, 2009 ND 45, ¶ 8, 763 N.W.2d 462. "If the district court fails to comply with the child support guidelines in determining an obligor's child support obligation, the court errs as a matter of law." *Serr v. Serr*, 2008 ND 56, ¶ 18, 746 N.W.2d 416.

[¶ 7] Lerud does not dispute he is underemployed based on the North Dakota child support guidelines. Rather, he argues the district court erroneously applied N.D. Admin. Code § 75–02–04.1–07(3)(b) in this case by imputing his income based on a North Dakota statewide average instead of a Minnesota average. "Administrative regulations are derivatives of statutes and are construed under rules of statutory construction." *Gadeco, LLC v. Indus. Comm'n*, 2013 ND 72, ¶ 10, 830 N.W.2d 535. "Words in a statute are given their plain, ordinary, and commonly understood meaning, unless defined by statute or unless a contrary intention plainly appears." *Great Western Bank v. Willmar Poultry Co.*, 2010 ND 50, ¶ 7, 780 N.W.2d 437. "Statutes are construed as a whole and are harmonized to give meaning to related provisions." *Id.* "Statutes should be harmonized to avoid conflicts between them." *Id.* "Words and phrases must be construed according to the context and the rules of grammar and the approved usage of the language." N.D.C.C.

§ 1–02–03. A statute is ambiguous if it is susceptible to differing but rational meanings. *Western Gas Resources, Inc. v. Heitkamp*, 489 N.W.2d 869, 872 (N.D.1992). "If the language of a statute is ambiguous or doubtful in meaning, a court may consider extrinsic aids, such as legislative history, to determine legislative intent." *Kaspari v. Olson*, 2011 ND 124, ¶ 13, 799 N.W.2d 348.

[¶ 8] N.D. Admin. Code § 75–02–04.1–07(3) states:

> Except as provided in subsections 4, 5, 6, 7, 8, and 11, gross income based on earning capacity equal to the greatest of subdivisions a through c, less actual gross earnings, must be imputed to an obligor who is unemployed or underemployed.
>
> . . . .
>
> b. An amount equal to six-tenths of the statewide average earnings for persons with similar work history and occupational qualifications.

We conclude the term "statewide average earnings" used in N.D. Admin. Code § 75–02–04.1–07(3) can be interpreted as referencing a person's home domicile in another state or to persons located within the state of North Dakota, and is ambiguous.

[¶ 9] The rulemaking history shows N.D. Admin. Code § 75–02–04.1–07(3) was amended to include the term "statewide average earnings" in 2008. *Minutes of Interim Comm. on Administrative Rules*, App. E (Sept. 11, 2008) (N.D. Dep't Human Services Report). N.D. Dep't Human Services, *Summary of Comments Received in Regard to Proposed Amendments to N.D. Admin. Code Ch. 75–02–04.1 Child Support Guidelines*, 9–10 (March 14, 2008). The prior version read as follows:

> b. An amount equal to six-tenths of prevailing gross monthly earnings in the

community of persons with similar work history and occupational qualifications. N.D. Admin. Code § 75–02–04.1–07(3) (2007). The Department of Human Services articulated the purpose of the change in response to public comments, stating:

There is no question that wages and other conditions vary across North Dakota. Using statewide average earnings is a way to acknowledge and adjust for those variations in the cases in which imputing income is applicable.

From an operational perspective, statewide average earnings are more likely to be readily accessible and available than prevailing amounts earned in a particular community. For example, Wages for ND Jobs, a publication of Job Service North Dakota, contains statewide average wages for over 2,000 occupations from 911 operator to zoologist. But the only "communities" for which wage is information [sic] is generally available through this publication are Bismarck, Fargo–Moorhead, and Grand Forks. For communities not listed in this publication, prevailing wage information may need to be obtained through discovery or other means that will drive up the cost of litigating child support cases.

N.D. Dep't Human Services, *Summary of Comments Received in Regard to Proposed Amendments to N.D. Admin. Code Ch. 75–02–04.1 Child Support Guidelines*, 9–10 (March 14, 2008).

[¶ 10] Based on the rulemaking history adopting this change, the purpose and effect of amending the rule was to simplify wage determinations, and it presumes a North Dakota statewide average would be used. A definition requiring income imputation based on the statewide average of the obligor's domicile in another state would increase the discovery costs of litigating child support cases and is contrary to the legislative intent of the amendment.

[¶ 11] Additionally, this reading of "statewide average earnings" is in harmony with related administrative regulations:

6. If an unemployed or underemployed obligor shows that employment opportunities, which would provide earnings at least equal to the lesser of the amounts determined under subdivision b or c of subsection 3, are unavailable within one hundred miles [160.93 kilometers] of the obligor's actual place of residence, income must be imputed based on earning capacity equal to the amount determined under subdivision a of subsection 3, less actual gross earnings.

N.D. Admin. Code § 75–02–04.1–07(6). This regulation was first included in the 1995 amendment to N.D. Admin. Code § 75–02–04.1–07. The rulemaking history of this provision indicates its adoption was specifically designed to, "permit the obligor to show that gross income based on earning capacity should not be imputed in specified circumstances." N.D. Dep't Human Services, *Summary of Comments Received in Regard to Proposed Amendments to N.D. Admin. Code Ch. 75–02–04.1 Child Support Guidelines*, 18 (Nov. 14, 1994). The regulation was not addressed during the 2008 amendment.

[¶ 12] Reading the regulations as a whole, an interpretation requiring imputation of income based on a North Dakota statewide average is in harmony with the above provision. An out-of-state obligor may seek adjustment of the obligation under N.D. Admin. Code § 75–02–04.1–07(6), and would be treated similarly to North Dakota residents under the regulations. An interpretation relying on statewide averages based on the obligor's residence would render the above regulation inoperable in certain cases and provides an ability

to circumvent child support obligations by relocation.

[¶ 13] Lerud argues prior case law supports his interpretation the obligor's domiciled state should define "statewide average earnings." We disagree. In *Richter v. Houser*, this Court held the district court did not err in finding a cable lineman was underemployed based on his prior work history outside the community as well as work conducted within the community. 1999 ND 147, ¶¶ 8–9, 598 N.W.2d 193. In that case, the obligor's claimed inability to work in the community was not based on common sense consideration of the circumstances, as his work had regularly required travel outside of the state, and his current employment was based on a voluntary change. *Id.* at ¶ 8. Here, Lerud does not provide supporting evidence of an inability to gain employment with earnings similar to those required under the Job Service Wages and Employment classification. Had he provided such evidence, he would be entitled to modification of his obligation under N.D. Admin. Code § 75–02–04.1–07(6). Our prior decisions also are based on the "community" standard altered in the 2008 amendment, and are distinguishable from the current regulation.

### III

[¶ 14] Lerud asserts the district court erred in failing to consider his profit and loss statements in finding he was underemployed. The district court found Lerud was underemployed based on the North Dakota tax returns provided by Lerud. No evidence was provided disputing the tax returns did not reasonably reflect Lerud's income, or dispute the finding of underemployment. We find no error by the trial court.

### IV

[¶ 15] We affirm the district court's judgment.

[¶ 16] CAROL RONNING KAPSNER, LISA FAIR McEVERS, DANIEL J. CROTHERS, and DALE V. SANDSTROM, JJ., concur.