2017.ND 179

**Arthur LANGVED, Petitioner and Appellant**

v.

**CONTINENTAL RESOURCES, INC., Appellee**

v.

**State of North Dakota by and thru the North Dakota Industrial Commission, and Wayne Stenehjem, Attorney General and Commissioner, Jack Dalrymple, Governor and Commissioner, Respondents and Appellees**

No. 20160363

Supreme Court of North Dakota.

Filed 7/17/2017

Fintan L. Dooley, Bismarck, ND, for petitioner and appellant.

Lawrence Bender, Bismarck, ND, for appellee Continental Resources, Inc.

David P. Garner (argued) and Matthew A. Sagsveen (appeared), Office of the Attorney General, Bismarck, ND, for respondents and appellees.

Kapsner, Justice.

[¶ 1] Arthur Langved appeals from a judgment affirming an order of the Industrial Commission to grant Continental Resources, Inc.'s application to terminate existing oil and gas well spacing units, to create new spacing units, and to modify well setback requirements for portions of the Elm Tree-Bakken and Sanish-Bakken pools located in McKenzie and Mountrail counties. Because the Commission regularly pursued its authority and its findings and conclusions are sustained by the law and by substantial and credible evidence, we affirm the judgment.

I

[¶ 2] Langved owns leased and unleased mineral interests in property covered by spacing units created by the Commission in 2013 and 2014. In 2015, Continental filed an application to amend these Commission orders to terminate the existing spacing units and to create new spacing units. The Commission explained:

> [Continental] made application to the Commission for an order amending Order No. 21151 for the Elm Tree-Bakken Pool to terminate an overlapping 2560-acre spacing unit comprised of Sections 17, 18, 19, and 20, Township 153 North, Range 93 West, McKenzie and Mountrail Counties, North Dakota (Sections 17, 18, 19, and 20), and amending Order No. 24889 for the Sanish-Bakken Pool to terminate two standup 1280-acre spacing units comprised of Sections 15 and 22; and Sections 16 and 21, Township 153 North, Range 93 West, Mountrail Coun-

> ty, North Dakota (Sections 15, 22, 16, and 21); and create a 480-acre spacing unit comprised of the E/2 W/2 NE/4, E/2 W/2 SE/4, and E/2 E/2 of Sections 15 and 22; create a 1280-acre spacing unit comprised of Sections 18 and 19; and create two 1680-acre spacing units comprised of Sections 16 and 17, and the W/2, W/2 W/2 NE/4, and W/2 W/2 SE/4 of Section 15; and Sections 20 and 21 and the W/2, W/2 W/2 NE/4, and W/2 W/2 SE/4 of Section 22, for the Elm Tree and/or Sanish-Bakken Pool, authorizing the drilling of multiple wells on each 480, 1280, and 1680-acre spacing unit, eliminating any tool error setback requirements and also reducing the minimum setbacks from the "heel and toe" from 200 feet to 50 feet, and such other relief as is appropriate.

Three horizontal wells had been completed on Langved's leased mineral acreage under the spacing units created by the Commission's 2013 and 2014 orders.

[¶ 3] The Commission held an evidentiary hearing on Continental's application. At the hearing, Continental offered exhibits and expert testimony that the existing development plan for the spacing units was inefficient and would cause the drilling of unnecessary wells. Continental submitted evidence that surface access problems justified the application. Available surface locations for drilling were limited and Continental had been unsuccessful in negotiating and obtaining surface use agreements from surface owners, including Langved. Langved appeared at the hearing and testified in opposition to Continental's application. Langved did not present expert evidence at the hearing, but cross-examined Continental's witnesses. Langved essentially argued the application should be denied because it would damage his property right to bargain with Continental for the use of his

surface estate for a drilling pad location and his royalty payments would be reduced under the new configuration.

[¶ 4] The Commission approved Continental's application. The Commission found that Continental's proposed new well locations would be further from Lake Sakakawea than the locations previously proposed and its proposed use of common drilling pads:

> will reduce surface impact and the expenditure of funds on surface facilities and enhance the economics of production, thereby preventing economic waste and promoting the greatest ultimate recovery of oil and gas from the Elm Tree and Sanish-Bakken Pools; and will improve the timing and economics of connecting wells to gas gathering systems thereby reducing gas flaring and will minimize surface disturbance and enhance the aesthetic values resulting from fewer production facilities.

[¶ 5] The Commission further found that "[e]vidence and testimony ... clearly shows the proposed spacing units and well configurations will prevent waste, prevent the drilling of unnecessary wells, and best protect correlative rights, by recovering more oil with fewer wells than the previous configurations which will ultimately benefit all owners in the proposed lands." The Commission based its decision on evidence that the estimated ultimate recovery from the existing spacing units was 36.2 million barrels of oil from 56 wells, while the estimated ultimate recovery from the proposed spacing units would be 37.352 million barrels of oil from 42 wells. The Commission estimated the ultimate recovery attributed to Langved's mineral acres under the existing spacing units to be 4.852 million barrels of oil and under the proposed new spacing units to be 4.125 million barrels of oil. Regarding Langved's argument about surface ownership rights, the Commission determined that "establishing surface locations and property rights outside of a spacing unit are beyond [its] jurisdiction." The Commission concluded, "If Continental's activities are successful, greater ultimate recovery of oil and gas from the pool will be achieved which will prevent waste and the drilling of unnecessary wells in a manner which will not have a detrimental effect on correlative rights."

[¶ 6] Langved petitioned the Commission for reconsideration based on seven grounds. In a six-page decision addressing each ground, the Commission denied the petition. The district court affirmed the Commission's order.

## II

[¶ 7] On appeal, Langved states the issue is "[w]hether the [Commission] could constitutionally, statutorily, or discretionally reunitize a producing drilling and spacing unit and thereby diminish his vested property rights and take his surface estate to afford Continental and the state of North Dakota an opportunity to access submerged minerals under the sections added in the enlarged unit."

[¶ 8] This Court exercises limited judicial review of Commission orders. In *Gadeco, LLC v. Indus. Comm'n*, 2012 ND 33, ¶ 15, 812 N.W.2d 405, we explained:

> The standard of judicial review of Commission orders is set forth in N.D.C.C. § 38-08-14(3), which provides that "[o]rders of the commission must be sustained by the district court if the commission has regularly pursued its authority and its findings and conclusions are sustained by the law and by substantial and credible evidence." This Court applies the same standard of review in appeals from district court involving orders of the Commission. *See Amoco Prod. Co. v. North Dakota Indus. Comm'n*, 307 N.W.2d 839, 842

(N.D. 1981). The "substantial evidence" test "is something less" than the greater weight of the evidence and the preponderance of the evidence tests, and differs from the usual standard of review for administrative decisions under N.D.C.C. § 28-32-46. *Hanson v. Industrial Comm'n,* 466 N.W.2d 587, 590 (N.D. 1991). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," and we "accord greater deference to Industrial Commission findings of fact than we ordinarily accord to other administrative agencies' findings of fact." *Id.* The Commission's decisions on questions of law are fully reviewable on appeal. *See Imperial Oil of North Dakota, Inc. v. Industrial Comm'n,* 406 N.W.2d 700, 702 (N.D. 1987).

A

[¶ 9] Langved argues the Commission violated his "substantive due process rights" under N.D. Const. art. 1, § 16, which provides: "Private property shall not be taken or damaged for public use without just compensation...."

▮ [¶ 10] We have repeatedly held that appeals from decisions of county commissions cannot be turned into inverse condemnation actions. *See Dahm v. Stark Cty. Bd. Of Cty. Comm'rs,* 2013 ND 241, ¶ 26, 841 N.W.2d 416; *Hagerott v. Morton Cty. Bd. Of Comm'rs,* 2010 ND 32, ¶ 24, 778 N.W.2d 813; *Gowan v. Ward Cty. Comm'n,* 2009 ND 72, ¶ 11, 764 N.W.2d 425. We conclude the same principle applies to administrative agency decisions. Therefore, we do not address Langved's arguments about his alleged "vested" property rights in his surface estate and in his royalties under the previous spacing units.

B

▮ [¶ 11] The remainder of Langved's arguments appear to challenge the Commission's authority to order modification of the spacing units and the sufficiency of the evidence to support its decision.

[¶ 12] Under N.D.C.C. ch. 38-08, the Commission has extremely broad and comprehensive powers to regulate oil and gas development in the state. *See, e.g., Envtl. Driven Solutions, LLC v. Dunn Cty.,* 2017 ND 45, ¶ 9, 890 N.W.2d 841; *GEM Razorback, LLC v. Zenergy, Inc.,* 2017 ND 33, ¶ 10, 890 N.W.2d 544. The "commission has continuing jurisdiction and authority over all persons and property, public and private, necessary to enforce effectively the provisions of this chapter." N.D.C.C. § 38-08-04. The Commission is authorized to "establish spacing units for a pool." N.D.C.C. § 38-08-07(1); *see also Gadeco,* 2012 ND 33, ¶ 4, 812 N.W.2d 405; *Texaco Inc. v. Indus. Comm'n,* 448 N.W.2d 621, 623 (N.D. 1989). The Commission is also authorized to modify previously designated spacing units:

> An order establishing units for a pool must cover all lands determined or believed to be underlaid by such pool, and may be modified by the commission from time to time to include additional areas determined to be underlaid by such pool. When found necessary for the prevention of waste, or to avoid the drilling of unnecessary wells, or to protect correlative rights, an order establishing spacing units in a pool may be modified by the commission to increase or decrease the size of spacing units in the pool or any zone thereof, or to permit the drilling of additional wells on a reasonable uniform plan in the pool, or any zone thereof, or an additional well on any spacing unit thereof.

N.D.C.C. § 38-08-07(4). Langved's 2004 lease to Diamond Resources specifically

authorizes the lessee to seek reunitization. We conclude the Commission regularly pursued its authority in modifying the spacing units.

[¶ 13] Spacing units may be modified by the Commission "[w]hen found necessary for the prevention of waste, or to avoid the drilling of unnecessary wells, or to protect correlative rights." N.D.C.C.' § 38-08-07(4). The three statutory considerations are separated by the word "or," which is disjunctive in nature and ordinarily indicates an alternative between different things or actions. *See, e.g., Sorenson v. Felton*, 2011 ND 33, ¶ 13, 793 N.W.2d 799. Consequently, each consideration is an alternative method to justify modification of spacing units. Here, the Commission found all three considerations favored modification.

[¶ 14] In finding that the proposed spacing units and well configurations will prevent waste and the drilling of unnecessary wells, the Commission relied on the evidence submitted by Continental and its own quantitative analysis of the proposed spacing units and ultimate recoveries for the proposed wells. Langved offered no evidence, expert or otherwise, to dispute the evidence before the Commission. Continental's witnesses testified that it could develop the proposed new spacing units with a more efficient drilling plan than the current plan for the existing spacing units. The Commission estimated the ultimate recoveries for the existing spacing units to be 36.4 million barrels of oil equivalent produced from 56 wells and the ultimate recovery for the proposed new spacing units to be 37.352 million barrels of oil equivalent produced from only 42 wells.

[¶ 15] The Commission also considered surface access issues associated with the area. Continental's witnesses testified about difficulties obtaining surface locations for well pads because most of the spacing units were under Lake Sakakawea, the terrain along the shoreline was steep, there were cultural resources and an existing pipeline in the area, and the company had unsuccessfully negotiated for surface use agreements with Langved for more than a year for well pad sites outside the spacing units. Contrary to Langved's argument that surface access issues should play no part in the analysis, we agree with the Commission's response to this argument:

The Commission must, and has, at various times, established or altered spacing units due to surface access issues. The presence of topographic features or cultural resources sometimes necessitates this. It would be impractical to establish spacing units knowing they are technologically impossible to develop or cannot be economically developed due to access issues.

[¶ 16] We conclude the Commission's findings that the proposed spacing units and well configurations will prevent waste and the drilling of unnecessary wells are sustained by the law and by substantial and credible evidence.

[¶ 17] Langved also challenges the Commission's finding that the new spacing units and well configurations will protect correlative rights. Langved argues the Commission failed to protect his correlative rights because the new spacing units reduce his recoverable royalties.

[¶ 18] This Court has defined "correlative rights" as:

[T]he opportunity afforded, so far as it is practicable to do so, to the owner of each property in a pool to produce without waste his just and equitable share of the oil or gas, or both, in the pool; being an amount, so far as can be practically determined, and so far as can practicably be obtained without waste, substantially in the proportion that the quantity

of recoverable oil or gas, or both, under such property bears to the total recoverable oil or gas, or both, in the pool, and for such purposes to use his just and equitable share of the reservoir energy.

*Hystad v. Indus. Comm'n*, 389 N.W.2d 590, 595-96 (N.D. 1986) (internal citations omitted). We have also observed:

> The correlative right is having the *opportunity* to produce, not having a guaranteed share of production. Once the state has afforded that opportunity, it has protected the correlative rights of a party; it need not ensure a share of production to a party.

*Hanson v. Indus. Comm'n*, 466 N.W.2d 587, 594 (N.D. 1991) (internal citation omitted).

[¶ 19] Langved, as an owner of leased minerals pooled within a spacing unit, does not have a right to a guaranteed share of production. As estimated by the Commission, Langved will continue to share in production under the new spacing units, albeit at a lesser amount. But this estimated reduction does not establish that Langved's correlative rights have been violated.

[¶ 20] The Commission found:

> Evidence and testimony examined by the Commission clearly shows the proposed spacing units and well configurations will prevent waste, prevent the drilling of unnecessary wells, and best protect correlative rights, by recovering more oil with fewer wells than the previous configurations which will ultimately benefit all owners in the proposed lands.

We conclude the Commission's finding that the new spacing units and well configurations will protect correlative rights is sustained by the law and by substantial and credible evidence.

### III

[¶ 21] We do not address other arguments because they are unnecessary to the decision or are without merit. The judgment is affirmed.

[¶ 22] Carol Ronning Kapsner

Daniel J. Crothers

Thomas E. Merrick, S.J.

Bradley A. Cruff, D.J.

Lisa Fair McEvers, Acting C.J.

[¶ 23] The Honorable Bradley A. Cruff, D.J., and the Honorable Thomas E. Merrick, S.J., sitting in place of VandeWalle, C.J., and Tufte, J., disqualified.