# IN THE SUPREME COURT
# STATE OF NORTH DAKOTA

## 2022 ND 119

Blue Appaloosa, Inc.,      Appellant

     v.

North Dakota Industrial Commission,      Appellee

## No. 20210292

Appeal from the District Court of Dunn County, Southwest Judicial District, the Honorable James D. Gion, Judge.

AFFIRMED.

Opinion of the Court by Tufte, Justice.

Jonathan P. Sanstead, Bismarck, N.D., for appellant; submitted on brief.

Matthew A. Sagsveen, Solicitor General, and David R. Phillips, Assistant Attorney General, Bismarck, N.D., for appellee; submitted on brief.

**Tufte, Justice.**

[¶1]   Blue Appaloosa, Inc., appeals from a judgment affirming an Industrial Commission order determining it violated N.D. Admin. Code ch. 43-02-03 by beginning construction of a treating plant prior to obtaining a permit or filing a bond with the Commission. We affirm.

I

[¶2]   In January 2018, Blue Appaloosa purchased undeveloped land in Dunn County, North Dakota. A few days after its purchase, Blue Appaloosa stated in an email to the oil and gas division of the Commission that it intended to construct a waste disposal plant on the land. Blue Appaloosa had the land surveyed by Advanced Engineering and Environmental Services, Inc. (AE2S). In October and November of 2018, Badlands Energy Services performed the heavy equipment work on the road leading up to the land. In addition to the road work, Blue Appaloosa's manager, Jeff Bennett, requested Badlands Energy to level the land. The dirt work performed included leveling the site, constructing a perimeter dike, stockpiling topsoil, building an entrance road, and removing trees and shrubs. After the dirt work was completed, Bennett hired individuals experienced in constructing and operating treating plants to assist with developing a treating plant.

[¶3]   In March 2019, the Commission received Blue Appaloosa's application to construct and operate a treating plant. After a hearing on the application, the Commission brought an administrative action against Blue Appaloosa, alleging it violated N.D. Admin. Code ch. 43-02-03 by beginning construction of a treating plant without first obtaining a permit or posting bond with the Commission. An administrative law judge (ALJ) presided over the administrative hearing and issued recommended findings of fact and conclusions of law. The ALJ concluded Blue Appaloosa violated N.D. Admin. Code ch. 43-02-03 and recommended civil penalties and costs be assessed. The Commission adopted the ALJ's recommended findings and conclusions, and

ordered penalties and costs against Blue Appaloosa. Blue Appaloosa appealed to the district court, and the court affirmed the Commission's order.

## II

[¶4] Blue Appaloosa challenges the Commission's jurisdiction and its interpretation of N.D. Admin. Code ch. 43-02-03. We exercise limited judicial review of Commission orders:

> The standard of judicial review of Commission orders is set forth in N.D.C.C. § 38-08-14(3), which provides that "[o]rders of the commission must be sustained by the district court if the commission has regularly pursued its authority and its findings and conclusions are sustained by the law and by substantial and credible evidence." This Court applies the same standard of review in appeals from district court involving orders of the Commission. The "substantial evidence" test "is something less" than the greater weight of the evidence and the preponderance of the evidence tests, and differs from the usual standard of review for administrative decisions under N.D.C.C. § 28-32-46. "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," and we "accord greater deference to Industrial Commission findings of fact than we ordinarily accord to other administrative agencies' findings of fact." The Commission's decisions on questions of law are fully reviewable on appeal.

*Langved v. Cont'l Res., Inc.*, 2017 ND 179, ¶ 8, 899 N.W.2d 267 (citations omitted).

## A

[¶5] Blue Appaloosa argues the Commission lacked jurisdiction over its land prior to submitting its application to construct and operate a treating plant.

[¶6] The Commission has "extremely broad and comprehensive powers to regulate oil and gas development in the state." *Langved*, 2017 ND 179, ¶ 12. The Commission's jurisdiction is provided under N.D.C.C. § 38-08-04, which states, in part:

1. The commission has continuing jurisdiction and authority over all persons and property, public and private, necessary to enforce effectively the provisions of this chapter. The commission has authority, and it is its duty, to make such investigations as it deems proper to determine whether waste exists or is imminent or whether other facts exist which justify action by the commission. The commission has the authority:

   a. To require:

      . . . .

      (4) The furnishing of a reasonable bond with good and sufficient surety, conditioned upon the full compliance with this chapter, and the rules and orders of the industrial commission . . . .

   b. To regulate:

      (1) The drilling, producing, and plugging of wells, the restoration of drilling and production sites, and all other operations for the production of oil or gas.

      . . . .

      (5) Disposal of saltwater and oilfield wastes.

         . . . .

         (b) The commission may consider, in addition to other authority granted under this section, safety of the location and road access to saltwater disposal wells, treating plants, and all associated facilities.

*See also Envtl. Driven Sols., LLC v. Dunn Cty.*, 2017 ND 45, ¶ 13, 890 N.W.2d 841 (concluding Commission has statutory authority to regulate treating plants).

[¶7]   Blue Appaloosa argues the Commission lacked jurisdiction prior to filing its treating plant application with the Commission in March 2019. This argument is premised on Blue Appaloosa's assertion that prior to submitting the application, the uncontroverted evidence showed no decision had been

made about what to build on the site. Blue Appaloosa acknowledges that activity consistent with anticipated construction of a treating plant had begun on the site, but relied on testimony to the effect that the dirt work was also consistent with other contemplated uses such as truck and trailer parking. The Commission's jurisdiction does not depend solely on the filing of an application, but instead on the jurisdictional fact of intent. Intent to construct a treating plant may be established by statements in an email or by statements in an application. Under N.D.C.C. § 38-08-04(1), the Commission has the authority and duty to investigate potential violations of its regulations, including a failure to obtain a permit or file a bond. There was substantial evidence in the record to support the Commission's finding that Blue Appaloosa had intent to construct a treating plant prior to submitting an application. Accordingly, the Commission has jurisdiction.

B

[¶8] Blue Appaloosa argues the Commission erroneously found it began construction of a treating plant in violation of N.D. Admin. Code ch. 43-02-03. We interpret regulations in the same manner as statutes:

> Administrative regulations are derivatives of statutes and are construed under rules of statutory construction. Statutory interpretation is a question of law, fully reviewable on appeal. The objective in interpreting regulations is to determine the drafter's intent by first looking at the language itself. Words are given their plain, ordinary, and commonly understood meaning, unless defined or unless a contrary intent plainly appears. Regulations are construed as a whole and are harmonized to give meaning to related provisions. If the relevant language is clear and unambiguous, the letter of it is not to be disregarded under the pretext of pursuing its spirit.

*Gadeco, LLC v. Indus. Comm'n*, 2013 ND 72, ¶ 10, 830 N.W.2d 535 (cleaned up). When interpreting and applying its own regulations, an agency has a reasonable range of informed discretion. *Americana Healthcare Ctr. v. N.D. Dep't of Human Servs.*, 540 N.W.2d 151, 153 (N.D. 1995). When the subject matter is complex or technical, the agency's expertise is entitled to special

4

deference. *Id.* (citing *Hanson v. Indus. Comm'n*, 466 N.W.2d 587, 590-91 (N.D. 1991)).

[¶9]   The permit regulation at the time provided: "No treating plant may be constructed without obtaining a permit from the commission after notice and hearing." N.D. Admin. Code § 43-02-03-51 (2014) (amended effective 2020).[1] The bond regulation provided: "Before construction of a treating plant begins, the operator shall file with the commission a surety bond or cash bond conditioned upon compliance with all laws, rules and regulations, and orders of the commission." N.D. Admin. Code § 43-02-03-51.3(1) (2018) (amended effective 2020). Blue Appaloosa did not obtain a permit or file a bond prior to completing the dirt work in October and November 2018. Blue Appaloosa asserts that dirt work, however, does not qualify as beginning construction on a treating plant.

[¶10] "Treating plant" is defined as "any plant permanently constructed or portable used for the purpose of wholly or partially reclaiming, treating, processing, or recycling tank bottoms, waste oils, drilling mud, waste from drilling operations, produced water, and other wastes related to crude oil and natural gas exploration and production. . . ." N.D. Admin. Code § 43-02-03-01(52). The Commission's regulations do not define "constructed" or "construction." Mark Bohrer, the underground injection control and treating plant manager in the oil and gas division of the Commission, testified dirt work is a part of constructing a treating plant and the Commission "has always interpreted dirt work to be construction or the beginning of operations."

[¶11] The Commission found the dirt work performed on Blue Appaloosa's land was quite extensive, consisting of leveling the site, constructing a perimeter dike, stockpiling topsoil, building an entrance road, and removing trees and shrubs. Bohrer testified that a permit and bond are required prior to performing dirt work necessary for a treating plant, because if the project were to be abandoned, the Commission would be tasked with restoring the land to

---

[1] The 2020 amendment became effective after any alleged violation in this case.

its original condition. *See* N.D.C.C. § 38-08-04.12(1) (requiring land disturbed by construction of treating plants to be reclaimed as close as practicable to its original condition as it existed before the construction). Bohrer noted the permit process allows the Commission to modify or reject plans that an operator submits, and the bond requirement ensures the operator pays for the reclamation costs if needed, avoiding the use of public funds.

[¶12] The information required to be included on an application for a treating plant permit supports the Commission's interpretation of its regulations that construction includes dirt work. The application requires a schematic drawing of the proposed treating plant site, detailing all facilities and equipment, including the location of tanks, dikes, flow lines, topsoil stockpile, and road access. N.D. Admin. Code § 43-02-03-51.1(1)(c). Further, a treating plant "permit shall automatically expire one year after the date it was issued, unless dirtwork operations have commenced to construct the site." N.D. Admin. Code § 43-02-03-51.1(6). The Commission found Blue Appaloosa had already performed several projects—diking, stockpiling topsoil, and building an entrance road—the locations of which were required to be approved as a part of the application and permitting process. Because any one feature of an application may be rejected or modified by the Commission in order to enforce the rules and statutes regulating oil and gas conservation in North Dakota, N.D. Admin. Code § 43-02-03-51.1(2); N.D. Admin. Code § 43-02-03-05, the application process would be impaired by an operator's completion of this work before submitting an application. *See Gadeco, LLC*, 2013 ND 72, ¶ 10 (harmonizing regulations to give meaning to related provisions). Subsection 6, N.D. Admin. Code § 43-02-03-51.1, highlights the significance of dirt work operations in the treating plant permit process generally, as such work holds open a permit that has already been issued to an operator.

[¶13] Additionally, the Commission found that Blue Appaloosa's intent to construct a treating plant was clear from its initial contact. In January 2018, soon after purchasing the land, Bennett emailed Bohrer to express Blue Appaloosa's intent to construct a waste disposal plant. In February 2018, Bennett provided Bohrer "a legal description of the land where [it] would like to build a waste transfer station" and a "rough sketch of the facility." AE2S

then surveyed the land. The Commission found the dirt work performed by Badlands Energy "matched the depictions on the survey and the survey was used a year later to support Blue Appaloosa's application for a treating plant permit."

[¶14] We conclude the Commission has regularly pursued its authority, and its findings and conclusions that Blue Appaloosa began construction on a treating plant are sustained by the law and by substantial and credible evidence.

III

[¶15] Count 2 of the administrative complaint alleged two separate and independent violations of the bond requirement. Because we conclude Blue Appaloosa violated N.D. Admin. Code § 43-02-03-51.3(1) (2018) by beginning construction of a treating plant prior to filing a bond, we need not reach whether it also violated N.D. Admin. Code § 43-02-03-15(6) (2018) by beginning operations of a treating plant prior to filing a bond. The judgment is affirmed.

[¶16] Jon J. Jensen, C.J.
Gerald W. VandeWalle
Daniel J. Crothers
Lisa Fair McEvers
Jerod E. Tufte