# United States Court of Appeals
## For the Eighth Circuit

———————————————

No. 21-3662

———————————————

Highline Exploration, Inc.

*Plaintiff - Appellant*

Nisku Royalty, LP; William R. LaCrosse; Tammy LaCrosse;
Empire Oil Company; Kent M. Lynch

*Plaintiff*s

v.

QEP Energy Company

*Defendant - Appellee*

————————

Appeal from United States District Court
for the District of North Dakota

————————

Submitted: June 16, 2022
Filed: August 3, 2022

————————

Before GRUENDER, BENTON, and GRASZ, Circuit Judges.

————————

GRASZ, Circuit Judge.

Highline Exploration, Inc. ("Highline"), Nisku Royalty, LP, William LaCrosse, Tammy LaCrosse, Empire Oil Company, and Kent M. Lynch

(collectively, "Plaintiffs") sued QEP Energy Company ("QEP"), alleging QEP breached overriding royalty interest assignments held by Plaintiffs because QEP deducted post-production costs from royalties it paid to Plaintiffs. The district court[1] granted summary judgment to QEP and denied the same to Plaintiffs. Highline appeals the district court's summary judgment order. We affirm.

## I. Background

Plaintiffs are oil and gas businesspeople and entities who established an "area of mutual interest"[2] in North Dakota known as the South Antelope Prospect. Plaintiffs sought to acquire oil, gas, and mineral leases in the South Antelope Prospect, which Plaintiffs would then package, market, and sell to an operator. The operator would produce oil, gas, and minerals under the leases and pay royalties to Plaintiffs.

In 2006, Plaintiffs entered into agreements with QEP's predecessor-in-interest, Helis Oil & Gas Company ("Helis"), under which Helis would operate the leases in the South Antelope Prospect. Pursuant to this agreement, Helis acquired thirty-two oil, gas, and mineral leases and Plaintiffs were assigned overriding royalty interests ("ORRIs") in the oil, gas, and other minerals Helis produced under the leases. The assignments of ORRIs all contained the same language,[3] granting to

---

[1]The Honorable Daniel L. Hovland, United States District Judge for the District of North Dakota.

[2]An area of mutual interest is "a geographical area within which [parties] agree to share certain . . . leases or other interests acquired by any of them in the future." 8 Patrick H. Martin & Bruce M. Kramer, Williams & Meyers, Oil and Gas Law, A Terms (Matthew Bender ed., 2022).

[3]All but one of these assignments were conveyances directly to Plaintiffs and used identical language. In the remaining assignment, Highline conveyed its lease to Helis and reserved an ORRI, which it assigned to itself and Plaintiffs in a separate instrument. The parties agree this assignment contains substantially the same language as the granting clauses of the other thirty-one instruments.

Plaintiffs "an overriding royalty interest . . . in the oil, gas and other minerals that are produced, saved and marketed under an[d] by virtue of the oil, gas and mineral leases[.]" Each assignment also provided: "[S]aid overriding royalty interest is to be free and clear of all costs and expenses of development and operation."

Helis paid Plaintiffs according to these ORRI assignments until 2012, when Helis sold its interests in the leases to QEP. Plaintiffs state they previously believed "at all relevant times" that Helis was not deducting post-production costs, such as costs of gathering, processing, and transportation, from its royalty payments to Plaintiffs. However, Plaintiffs now concede that Helis did consistently deduct such costs from the royalty payments. After QEP acquired the leases in 2012, it continued Helis's practice of deducting post-production costs from the royalty payments to Plaintiffs.

Plaintiffs allegedly discovered QEP was deducting post-production costs in 2018 during an audit of Highline's royalty interests. Soon thereafter, Highline sent two letters to QEP asserting the ORRI assignment language, "free and clear of all costs and expenses of development and operation," forbade QEP from deducting post-production costs. The letters demanded QEP cease deducting post-production costs from the royalty payments and refund all previously deducted post-production costs with interest to Highline. QEP rebuffed Highline's demands, asserting the language of the ORRI assignments allowed QEP to deduct post-production costs.

After QEP rejected Highline's demands, Plaintiffs sued QEP alleging breach of contract, unjust enrichment, and conversion. They requested a declaratory judgment and an accounting. The case centered on the issue of whether the ORRI assignments authorized QEP's deduction of post-production costs from its royalty payments. Highline argued the plain language of the assignments forbade all deductions except for taxes. QEP maintained the plain language of the assignments allowed it to deduct post-production costs. After discovery, both parties moved for summary judgment on this issue.

The district court concluded QEP was entitled to deduct post-production costs from royalty payments it paid to Plaintiffs under the "plain, clear, and unambiguous" language in the assignments that created the ORRIs. In light of this conclusion, the district court granted QEP's motion for summary judgment and denied Plaintiffs' motion. Only Highline appeals the district court's summary judgment order.

## II. Analysis

On appeal, Highline asserts the district court erred in granting summary judgment to QEP. "We review a district court's grant of summary judgment de novo, including its interpretation of state law." *Slawson Expl. Co. v. Nine Point Energy, LLC*, 966 F.3d 775, 778 (8th Cir. 2020) (quoting *Raines v. Safeco Ins. Co. of Am.*, 637 F.3d 872, 875 (8th Cir. 2011)). Summary judgment is appropriate if, viewing the evidence in the light most favorable to Highline, there exist no genuine issues of material fact and QEP is entitled to judgment as a matter of law. *See id.*; Fed. R. Civ. P. 56(a). The parties agree North Dakota law governs this action.

Highline advances three primary arguments to support its claim that the district court improperly granted summary judgment to QEP. We address each in turn.

## A. Meaning of Free and Clear Clause

Highline first argues the district court's interpretation of the ORRI assignments failed to ascribe meaning to the language "free and clear of all costs and expenses of development and operation" ("the free and clear clause") as required by North Dakota's laws of contract interpretation. *See* N.D. Cent. Code § 9-07-06 ("The whole of a contract is to be taken together so as to give effect to every part if reasonably practicable. Each clause is to help interpret the others."). In other words, Highline contends the district court's interpretation of the contract impermissibly renders the free and clear clause superfluous. We disagree.

Under North Dakota law, "[a]ssignments and deeds are interpreted in the same manner as contracts." *Hallin v. Inland Oil & Gas Corp.*, 903 N.W.2d 61, 64 (N.D. 2017). When interpreting a written contract, we are to determine the parties' intention "from the writing alone if possible." N.D. Cent. Code § 9-07-04. We will construe a contract "as a whole to give effect to each provision if reasonably practicable." *Bice v. Petro-Hunt, L.L.C.*, 768 N.W.2d 496, 500 (N.D. 2009) (citing N.D. Cent. Code § 9-07-06).

Interpreting the disputed assignments, we hold the free and clear clause was intended to clarify which costs were deductible from the nonstandard ORRIs created by the assignments. The parties do not dispute the established meaning of the term "overriding royalty interest." Highline and QEP both rely on the definition adopted by the North Dakota Supreme Court: "An overriding royalty interest is an interest in oil and gas that *has been produced*[.]" *Cont'l Res., Inc. v. Armstrong*, 965 N.W.2d 57, 64 (N.D. 2021) (emphasis added) (quoting *El Petron Enters., LLC v. Whiting Res. Corp.*, No. 1:16-cv-090, 2018 WL 1322391, at *3 (D.N.D. Mar. 14, 2018)). Thus, the parties agree a standard ORRI is an interest at the point of production (i.e., the surface). *See also* 8 Martin & Kramer, *supra*, O Terms (defining ORRI as "[a]n interest in oil and gas produced at the surface"); 5 Eugene Kuntz, A Treatise on the Law of Oil & Gas § 63.2 (Matthew Bender ed., 2022) ("[T]he owner of [an ORRI] is entitled to the specified share of oil or gas produced under the terms of the lease[.]").

Here, the parties did not create a standard ORRI. The language in the assignments creates a more specific interest than a typical ORRI. The assignments provide for "an overriding royalty interest . . . in the oil, gas and other minerals that are produced, *saved, and marketed* under an[d] by virtue of the oil, gas and mineral leases" now held by QEP. (emphasis added). This language specifies an interest not simply in the minerals "produced" under the relevant leases, but in those "produced, saved, and marketed."

The free and clear clause clarifies that the only costs excluded from the royalty payments are the normally excluded costs of development and operation. *See* 5 Kuntz, *supra*, § 63.2 ("Ordinarily, the overriding royalty is free of costs incident to development, production, and operation."). If the assignments instead referred simply to "all costs and expenses" without any limiting language or did not discuss at all what costs were excluded, it would be unclear whether post-production costs, including expenses related to "sav[ing]" or "market[ing]" the minerals, were also deductible from the royalty payments. *See West v. Alpar Res., Inc.*, 298 N.W.2d 484, 490 (N.D. 1980) (holding royalty clause entitling grantee to "one-eighth of the proceeds from the sale of the gas" was ambiguous as to what costs were deductible). *See also Chesapeake Expl., L.L.C. v. Hyder*, 483 S.W.3d 870, 874 (Tex. 2016) (interpreting "cost-free" to refer to both production and post-production costs where the phrase did not specify which costs were deductible).

We agree with the district court's conclusion: the free and clear clause was intended to specify which costs were not deductible from the ORRIs. This interpretation does not render the free and clear clause meaningless. The assignments provide for nonstandard ORRIs, and the free and clear clause clarifies that the standard costs (production costs) are excluded from royalty payment calculations. Therefore, Highline's argument that the district court failed to provide meaning to the free and clear clause fails.

## B. Meaning of Operation Costs

Highline next argues the district court erred in concluding the phrase "costs and expenses of . . . operation" ("operation costs") unambiguously refers only to production costs and not to post-production costs.[4] Specifically, Highline asserts the district court should have held the phrase was ambiguous based on QEP's use of the term "operations" in its public filings and Highline's expert report denying a clear meaning of "operations" in the oil and gas industry. Because we agree with the

---

[4]Highline does not argue "costs and expenses of development" can include post-production costs.

district court's conclusion that "costs and expenses of . . . operation" is unambiguous, Highline's extrinsic evidence is irrelevant in interpreting the assignments. Thus, Highline's second argument fails.

Under North Dakota law, whether a contract is ambiguous is a question of law. *Blasi v. Bruin E&P Partners, LLC*, 959 N.W.2d 872, 876 (N.D. 2021). Where a contract is unambiguous, we will not consider extrinsic evidence of the parties' intent. *Id.* Extrinsic evidence cannot be used to create an ambiguity. *Brash v. Gulleson*, 835 N.W.2d 798, 803 (N.D. 2013). We interpret the words of a contract according to their ordinary meaning "unless used by the parties in a technical sense . . . in which case the latter must be followed." N.D. Cent. Code § 9-07-09. Whether a word has a technical meaning is a question of law. *See Myaer v. Nodak Mut. Ins. Co.*, 812 N.W.2d 345, 350 (N.D. 2012) ("We may look to principles of the applicable law at issue to see whether an undefined term has a technical meaning."). *See also* N.D. Cent. Code § 1-02-03 ("Technical words and phrases *and such others as have acquired a peculiar and appropriate meaning in law, or as are defined by statute*, must be construed according to such peculiar and appropriate meaning or definition." (emphasis added)).

The district court determined that operation costs had an unambiguous technical meaning and referred exclusively to production costs. It based this conclusion on several cases interpreting the oil and gas law of Texas and Louisiana, especially *J. Fleet Oil & Gas Corp. v. Chesapeake La., L.P.*, Civ. No. 15-2461, 2018 WL 1463529, at *8 (W.D. La. Mar. 22, 2018) (unpublished) ("'[D]evelopment, production, and operation expense[s]' all refer to production costs, as opposed to post-production costs."). Highline contends the district court's determination of the meaning of operation costs amounted to a factual finding that was inappropriate at the summary judgment stage.[5]

---

[5]Highline further contends we must construe a "Joint Operating Agreement" ("JOA") between Plaintiffs and Helis together with the ORRI assignments, citing N.D. Cent. Code § 9-07-07 ("Several contracts relating to the same matters between the same parties and made as parts of substantially one transaction are to be taken

Highline's argument misunderstands North Dakota law. In North Dakota, whether a contractual term has a technical meaning is a question of law. *See Myaer*, 812 N.W.2d at 350. *See also* N.D. Cent. Code § 1-02-03. Accordingly, the district court exclusively cited case law in its interpretation of operation costs. Highline protests that the district court cited "four out-of-state cases" to help interpret the phrase's meaning. But this assertion fails to recognize North Dakota courts regularly look to the law of other states, including "[t]he three major oil and gas producing states, Louisiana, Mississippi and Texas," when interpreting oil and gas leases and assignments. *Bice*, 768 N.W.2d at 501. Indeed, the definition of ORRI adopted by the North Dakota Supreme Court, and cited by Highline, originates in Kansas case law. *El Petron Enters.*, 2018 WL 1322391, at *3 (citing *Reynolds-Rexwinkle Oil, Inc. v. Petex, Inc.*, 1 P.3d 909, 914 (Kan. 2000)). Highline effectively concedes this point in its brief, citing Texas case law to support its own interpretation of operation costs. Crucially, however, none of the cases Highline cites supports the proposition that operation costs can refer to post-production costs. In light of the case law, we agree with the district court's conclusion that the technical term "costs and expenses of . . . operation" unambiguously refers to production costs and not post-production costs.

This technical meaning of operation costs also harmonizes with our determination of the intent of the parties as evident in the granting language. As we noted above, the assignments at issue created nonstandard ORRIs and the parties intended the free and clear clause to specify that only production costs were nondeductible. Given all this, we hold the free and clear clause was not ambiguous. Thus, extrinsic evidence, including QEP's public filings and Highline's expert

---

together."), and that the JOA's broader use of the term "operations" should be read into the assignments. Even assuming Highline is correct that we must construe the assignments together with the JOA, its argument is without merit because the JOA's plain language supports our interpretation of the ORRIs. Article VI.D of the JOA provides: "Any extra expenditure incurred in the taking in kind or separate disposition by any party of its proportionate share of the production shall be borne by such party." This clause clearly contemplates that the parties will pay post-production costs on royalties not taken in kind.

report, was irrelevant in determining the clause's meaning and that summary judgment was appropriate.[6]

## C. Intent to Modify Overriding Royalties

Last, we consider Highline's argument that the district court erred in concluding the parties, sophisticated oil and gas businesspeople and entities, did not intend the free and clear clause to modify the ORRI granting language. Highline argues the parties were well aware ORRIs were not normally subject to production costs, and thus the parties must have intended the free and clear clause to modify which costs were deductible. Highline asserts that because the district court held the free and clear clause only referred to production costs, it ignored the intent of the parties for the free and clear clause to modify the ORRIs. This argument falls flat. The "free and clear" language does modify the ORRIs: it limits the expenses that can be deducted from the parties' nonstandard ORRI grants. Given this interpretation, the free and clear clause's modification of the ORRIs supports summary judgment. Even as modified, the ORRIs created in the assignments did not prohibit deduction of post-production costs.

## III. Conclusion

We affirm the district court's grant of summary judgment to QEP and denial of summary judgment to Plaintiffs.

—————————————————————

---

[6]Given our conclusion that the term "costs and expenses of . . . operation" is unambiguous, we need not reach Highline's argument that ambiguity should be construed against QEP or QEP's alternative argument that the parties' course of performance also supports summary judgment in its favor.