# IN THE SUPREME COURT
# STATE OF NORTH DAKOTA

## 2025 ND 126

Equinor Energy, LP,                                                    Appellant

    v.

North Dakota Industrial Commission
and Versa Energy, LLC,                                               Appellees

## No. 20240357

Appeal from the District Court of McKenzie County, Northwest Judicial District, the Honorable Daniel S. El-Dweek, Judge.

REVERSED AND VACATED.

Opinion of the Court by Tufte, Justice.

Spencer D. Ptacek (argued), Lawrence Bender (on brief), and Mark W. Vyvyan (on brief), Bismarck, N.D., for appellant.

David P. Garner, Assistant Attorney General, Bismarck, N.D., for appellee North Dakota Industrial Commission.

Andrew K. Glenn (argued) and James P. Parrot (appeared), Denver, Colorado, for appellee Versa Energy, LLC.

**Tufte, Justice.**

[¶1]   Equinor Energy LP appeals from a district court order affirming a North Dakota Industrial Commission order. On appeal, Equinor argues the Commission erred in: (1) concluding it has jurisdiction to decide a dispute between private parties regarding saltwater gathering costs; (2) its construction of "reasonable actual cost" under N.D.C.C. § 38-08-08(2); and (3) concluding the costs Equinor assessed Versa for saltwater gathering services were improper. Because we conclude the Commission lacked jurisdiction to adjudicate the dispute, we reverse the district court's order and vacate the Commission's order.

I

[¶2]   From 2011 to 2021, Equinor operated oil and gas wells in sixteen spacing units in McKenzie, Williams, and Mountrail Counties ("subject wells"). In 2013, Versa Energy, LLC, acquired a non-operating working interest in the subject wells.

[¶3]   As operator of the subject wells, Equinor contracted with its affiliate, Equinor Pipeline LLC (EPL) for transport of produced water through its pipeline gathering system. Equinor determined the prices it paid EPL for its saltwater gathering services by soliciting bids from trucking companies for saltwater transport and disposal, and then using those bids to determine a fair-market rate for EPL's services.

[¶4]   In June 2021, Versa petitioned the Commission to determine proper costs against Equinor pursuant to N.D.C.C. § 38-08-08(2), alleging that "Equinor has charged Versa more than the 'reasonable actual cost' of operation in violation of N.D.C.C. § 38-08-08." Equinor filed a motion to dismiss Versa's petition, arguing that the Commission lacked jurisdiction to adjudicate Versa's claim because N.D.C.C. § 38-08-08(2) is not applicable to private-rights disputes governed by private contracts. The Commission concluded it had jurisdiction under N.D.C.C. § 38-08-08(2) and denied Equinor's motion to dismiss.

1

[¶5]   In January 2024, following a hearing, the Commission issued its order, concluding: (1) it had jurisdiction, under N.D.C.C. § 38-08-04(1)(b), to adjudicate Versa's claim; (2) Equinor's fair tender process did not yield the actual cost of gathering saltwater by pipeline and thus the costs Equinor charged Versa were improper; and (3) the proper cost for saltwater gathering services by pipeline for the subject wells was $0.35 per barrel. Equinor appealed to the district court, which affirmed the Commission's order.

II

[¶6]   Equinor argues the Commission lacks jurisdiction to decide disputes over saltwater gathering costs. The Commission argues that, under N.D.C.C. § 38-08-04(1)(b)(1), it has "cradle to grave jurisdiction over produced water," which includes authority to adjudicate disputes between private parties over saltwater gathering costs. Versa argues saltwater gathering costs are operational costs subject to the Commission's authority under N.D.C.C. § 38-08-08(2) to determine proper costs for the "drilling and operation of a well."

A

[¶7]   We exercise limited judicial review of Commission orders:

> The standard of judicial review of Commission orders is set forth in N.D.C.C. § 38-08-14(3), which provides that "[o]rders of the commission must be sustained by the district court if the commission has regularly pursued its authority and its findings and conclusions are sustained by the law and by substantial and credible evidence." This Court applies the same standard of review in appeals from district court involving orders of the Commission. The "substantial evidence" test "is something less" than the greater weight of the evidence and the preponderance of the evidence tests, and differs from the usual standard of review for administrative decisions under N.D.C.C. § 28-32-46. "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," and we "accord greater deference to Industrial Commission findings of fact than we ordinarily accord to other administrative agencies' findings of fact." The Commission's decisions on questions of law are fully reviewable on appeal.

2

*Blue Appaloosa, Inc. v. N.D. Indus. Comm'n*, 2022 ND 119, ¶ 4, 975 N.W.2d 578. The interpretation of a statute is a question of law and thus fully reviewable on appeal. *Cont'l Res., Inc. v. Counce Energy BC #1, LLC*, 2018 ND 10, ¶ 8, 905 N.W.2d 768.

B

[¶8]   Under N.D.C.C. ch. 38-08, "[t]he Commission has 'extremely broad and comprehensive powers to regulate oil and gas development in the state.'" *Blue Appaloosa*, 2022 ND 119, ¶ 6 (quoting *Langved v. Cont'l Res., Inc.*, 2017 ND 179, ¶ 12, 899 N.W.2d 267). Section 38-08-04, N.D.C.C., outlines the Commission's jurisdiction, providing, in part:

> 1. The commission has continuing jurisdiction and authority over all persons and property, public and private, necessary to enforce effectively the provisions of this chapter. The commission has authority, and it is its duty, to make such investigations as it deems proper to determine whether waste exists or is imminent or whether other facts exist which justify action by the commission. The commission has the authority:
>    . . . .
>    b.  To regulate:
>    (1) The drilling, producing, and plugging of wells, the restoration of drilling and production sites, and all other operations for the production of oil or gas.
>    (2) The shooting and chemical treatment of wells.
>    (3) The spacing of wells.
>    (4) Operations to increase ultimate recovery such as cycling of gas, the maintenance of pressure, and the introduction of gas, water, or other substances into producing formations.
>    (5) Disposal of saltwater and oilfield wastes.
>        (a) The commission shall give all affected counties written notice of hearings in such matters at least fifteen days before the hearing.
>        (b) The commission may consider, in addition to other authority granted under this section, safety of the location and road access to saltwater disposal wells, treating plants, and all associated facilities.

N.D.C.C. § 38-08-04(1)(b)(1)–(5).

[¶9]   The Commission argues it has "cradle to grave jurisdiction over produced water" under N.D.C.C. § 38-08-04(1)(b)(1)–(5), which includes adjudicatory jurisdiction to resolve disputes between private parties regarding saltwater gathering costs. The Commission's argument over-reads the statutory authority "[t]o regulate" produced water under N.D.C.C. § 38-08-04(1)(b). Although not specifically defined in N.D.C.C. ch. 38-08, "regulate" commonly means "[t]o control (an activity or process) esp[ecially] through the implementation of rules." *Regulate*, Black's Law Dictionary 1540 (12th ed. 2024).

[¶10] Adjudicatory jurisdiction does not necessarily inhere in an agency's regulatory jurisdiction. "A public administrative body has such adjudicatory jurisdiction as is conferred on it by statute. The jurisdiction of an administrative agency is dependent upon the terms of the statute[.]" *Kirkpatrick v. N.D. Dep't of Transp.*, 2023 ND 190, ¶ 9, 996 N.W.2d 640 (quoting *Schwind v. Dir., N.D. Dep't of Transp.*, 462 N.W.2d 147, 150 (N.D. 1990)). Absent a specific statutory grant of adjudicatory authority, an administrative agency generally cannot adjudicate disputes over contractual rights between parties. *See* 73 C.J.S. Public Administrative Law and Procedure § 179; *see Preferred Energy Props. v. Wyo. State Bd. of Equalization*, 890 P.2d 1110, 1113 (Wyo. 1995) ("An administrative agency does not have the power to settle and adjudicate the rights of parties under a contract. The reasoning behind the rule is that an agency only has such powers as are granted to it by the legislature. Thus, unless an agency has been specifically granted the power to settle and adjudicate rights and obligations between parties to a contract, it does not have that power.").

[¶11] Section 38-08-04, N.D.C.C., grants the Commission broad regulatory jurisdiction over disposal of saltwater, but it does not expressly or by necessary implication grant jurisdiction to adjudicate disputes arising under contracts relating to saltwater disposal. We conclude that the Commission lacked jurisdiction under N.D.C.C. § 38-08-04 to adjudicate the dispute between Equinor and Versa regarding saltwater gathering costs.

[¶12] Versa also petitioned the Commission to determine the amount of its reasonable actual costs owed to Equinor pursuant to N.D.C.C. § 38-08-08(2), arguing the Commission has express jurisdiction under N.D.C.C. § 38-08-08(2) to determine the proper costs because "operation of a well" encompasses saltwater gathering. The following portion of N.D.C.C. § 38-08-08(2) is at issue:

> Each such pooling order [(as described under N.D.C.C. § 38-08-08(1))] must make provision for the drilling and operation of a well on the spacing unit, and for the payment of the reasonable actual cost thereof by the owners of interests in the spacing unit, plus a reasonable charge for supervision. In the event of any dispute as to such costs, the commission shall determine the proper costs.

N.D.C.C. § 38-08-08(2). Whether the Commission has jurisdiction under N.D.C.C. § 38-08-08(2) to determine proper costs for saltwater gathering thus depends on whether "operation of a well on the spacing unit" includes saltwater gathering.

[¶13] A threshold issue is what costs fall within the scope of "operation" costs under N.D.C.C. § 38-08-08(2). Although a novel issue before this Court, federal courts and the Commission itself have addressed the scope of "operation" costs under North Dakota law and concluded that "operation" costs encompass production costs but exclude post-production costs. *Highline Exploration v. QEP Energy Co.*, 2021 WL 4847999 (D.N.D. Oct. 18, 2021), *aff'd* 43 F.4th 813 (8th Cir. 2022); N.D. Indus. Comm'n, Order No. 31754 (Oct. 4, 2023). In an order it issued in a different matter, the Commission expressly articulated its interpretation of "operation" under N.D.C.C. § 38-08-08(2) to exclude post-production costs: "The Commission's technical interpretation of the phrase 'operation of a well', in conjunction with the Commission's obligation to determine the reasonable actual costs associated with well operations under NDCC section 38-08-08(2), excludes post-production costs." N.D. Indus. Comm'n, Order No. 31754, ¶ 21.

[¶14] The Commission relied in Order No. 31754 on the federal district court's decision in *Highline Exploration v. QEP Energy Co.*, 2021 WL 4847999 (D.N.D. Oct. 18, 2021), *aff'd* 43 F.4th 813 (8th Cir. 2022), which distinguished "production

costs" from "post-production costs" as those terms are commonly understood in the oil and gas industry. N.D. Indus. Comm'n, Order No. 31754, ¶¶ 18–21. The court explained: "Post-production costs are the expenses incurred in bringing the product to market including processing, compression, transportation, marketing, and other costs necessary to prepare raw oil or gas for sale. Production costs are those expenses incurred in bringing oil or gas to the surface." *Highline*, 2021 WL 4847999, at *4. Citing to *Bice v. Petro-Hunt, L.L.C.*, 2009 ND 124, 768 N.W.2d 496, a panel of the Eighth Circuit held that the district court properly relied on the law of "'[t]he three major oil and gas producing states, Louisiana, Mississippi and Texas,'" in "determin[ing] that operation costs ha[ve] an unambiguous technical meaning and refer[] exclusively to production costs." *Highline*, 43 F.4th at 818–19 (quoting *Bice*, 2009 ND 124, ¶ 15).

[¶15] We agree with the interpretation of the federal courts in *Highline* and the Commission in its Order No. 31754 and hold that the "costs" of "operation of a well on a spacing unit" under N.D.C.C. § 38-08-08(2) include production costs but exclude post-production costs. The Commission's jurisdiction to determine proper costs under § 38-08-08(2) thus extends only to production costs and excludes post-production costs.

[¶16] Whether the Commission has jurisdiction under N.D.C.C. § 38-08-08(2) to determine proper costs for saltwater gathering thus depends on whether saltwater gathering is a production cost. Equinor argues saltwater gathering costs are a post-production cost rather than an operating or production cost. Neither Versa nor the Commission frames the issue in terms of production and post-production costs. The Commission does not assert jurisdiction under N.D.C.C. § 38-08-08(2) on appeal, relying instead on N.D.C.C. § 38-08-04. Versa argues the Commission has jurisdiction to determine proper costs of saltwater gathering under N.D.C.C. § 38-08-08(2) because "saltwater gathering fees constitute an operational cost since they are necessary to produce oil from a well."

[¶17] Versa cites several cases in support of this industry-specific technical meaning of the term "operation." *See Danciger Oil & Refineries, Inc. v. Hamill Drilling Co.*, 171 S.W.2d 321, 323 (Tex. 1943) (holding "operating expense" refers

6

to costs "necessary" to produce oil and gas for market); *Smith v. Marshall Oil Corp.*, 2004 OK 10, 85 P.3d 830 (Okla. 2004) (operating expenses include the "lifting expenses" needed to extract the oil, such as "saltwater disposal payments . . . , [and] annual electric costs"); *Colburn v. Parker & Parsley Dev. Co.*, 842 P.2d 321 (Kan. Ct. App. 1992) (production of saltwater is unavoidable and thus the lessee has an implied right to construct a disposal well); *Pro-Chem, Inc. v. Lassetter Petroleum, Inc.*, 837 P.2d 823 (Kan. Ct. App. 1990) (reworking operations includes rerouting saltwater gathering lines because a "well could not be operated without disposing of the saltwater"). Versa also cites to the Council of Petroleum Accountants Societies guidelines for "allocation of operating expenses," which defines "direct operating costs" to include water disposal. Neither Versa nor the authorities on which it relies state, however, that saltwater gathering is a post-production cost.

[¶18] Although this Court has not yet specifically addressed whether saltwater gathering is a production or post-production cost for the purpose of determining the Commission's jurisdiction under N.D.C.C. § 38-08-08(2), we have addressed the issue in the context of royalty calculations. In *Bice*, the Court expressly adopted the "at the well" rule for royalty calculations, which provides:

> [T]he lessee calculates the market value of the gas at the well by taking the sales price that it received for its oil or gas production at a downstream point of sale and then subtracting the reasonable post-production costs (including transportation, gathering, compression, processing, treating, and marketing costs) that the lessee incurred after extracting the oil or gas from the ground.

2009 ND 124, ¶ 14 (cleaned up). This Court did not specifically state in *Bice* that saltwater gathering is a post-production cost, but a later decision makes clear that it is commonly understood as such. In *Kittleson v. Grynberg Petroleum Co*, 2016 ND 44, 876 N.W.2d 443, Grynberg, the operator, argued that the district court's interpretation of a royalty clause to prohibit Grynberg from deducting post-production costs from the royalty was contrary to *Bice*. We disagreed, explaining that—although, under the "at the well" rule, an operator may deduct post-production costs from a royalty—the specific terms of the royalty clause controlled:

> Here, similar to *Bice,* the royalty clause of the lease requires Grynberg to pay Kittleson the market value at the well for all gas produced from the leased premises. However, unlike *Bice,* the royalty clause contains additional language stating, "provided however, that there shall be no deductions from the value of Lessor's royalty of any required processing, cost of dehydration, compression, transportation, or other matter to market such gas."
>
> Here, "market value at the well" and "no deductions from the . . . royalty" are in conflict. Under the "at the well" rule, calculating market value using the work-back method allows a lessee to deduct post-production costs from the royalty. The "no deductions" language in the royalty clause, however, specifically prohibits deductions of post-production costs from the royalty. We hold the more specific "no deductions" language qualifies and prevails over "market value at the well."

*Kittleson*, 2016 ND 44, ¶¶ 13, 15. Implicit in our decision is that the "cost of dehydration" is a post-production cost.

[¶19] Our conclusion that salt-water gathering is a post-production cost outside of the Commission's jurisdiction under N.D.C.C. § 38-08-08(2) is consistent with North Dakota law distinguishing between production and post-production costs in royalty calculations as well as the terminology of the oil and gas industry generally. In discussing allocation of costs in the calculation of royalties, one treatise explains that water removal is part of "treating" the raw product that is brought to the surface:

> Crude oil as it comes from the well may contain water and other foreign substances, making it unfit for delivery to a pipeline. Where this is true, the question is raised as to whether the lessee is under a duty to treat the oil for the purpose of removing the water and sediment at its own expense. Some leases provide that the lessor shall bear a proportionate share of the cost of treatment of the oil to make it marketable, and where this is true the lessee is, of course, under no duty to perform this service free of cost to the lessor.

"Treatment costs in calculation of oil and gas royalties," 3A Summers Oil and Gas § 33:5 (3d ed.). Saltwater gathering—the treatment of the product by removing water and the transportation of that water to a disposal site—thus falls

within the plain description of post-production costs to "include[e] transportation, gathering, compression, processing, treating, and marketing costs[]" that the lessee incur[s] after extracting the oil or gas from the ground. *Bice*, 2009 ND 124, ¶ 14.

[¶20] We conclude that saltwater gathering costs are post-production costs outside the scope of "drilling and operation of a well on the spacing unit." N.D.C.C. § 38-08-08(2). Because saltwater gathering costs are post-production costs outside the scope of the Commission's adjudicatory authority under N.D.C.C. § 38-08-08(2), we conclude that the Commission lacked jurisdiction under N.D.C.C. § 38-08-08(2) to adjudicate the cost dispute.

### III

[¶21] We do not address the parties' remaining arguments because they are either unnecessary to the decision or are without merit. We reverse the district court's order and vacate the Commission's order.

[¶22]   Jon J. Jensen, C.J.
        Daniel J. Crothers
        Lisa Fair McEvers
        Jerod E. Tufte
        Douglas A. Bahr